558 So.2d 665 (1990)
STATE of Louisiana
v.
Louis L. CLARK.
No. KA 89 0362.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
*667 Bryan Bush, Dist. Atty. by Don Wall, Asst. Dist. Atty., Baton Rouge, for plaintiff/appellee.
Johnny Wellons, Baton Rouge, for defendant/appellant.
Before CARTER, SAVOIE AND ALFORD, JJ.
ALFORD, Judge.
Louis L. Clark was indicted by the East Baton Rouge Parish grand jury for second-degree murder, a violation of La.R.S. 14:30.1. He was tried by a jury, which convicted him as charged. The trial court imposed the mandatory penalty of life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. Defendant appealed, urging nine assignments of error.
Defendant was charged with the murder of Alex Williams. The victim had been romantically involved with Clemenstine Clark, defendant's wife, for several years. Defendant shot the victim with a rifle after he discovered his wife and the victim together in the 69th Street park, where Clemenstine Clark worked. The victim was seated in his vehicle, a white van, at the time he was shot. In a statement taken shortly after the incident, defendant claimed that he shot the victim because he saw the victim reach under the seat of the van and he feared the victim planned to assault him. At trial, defendant testified that he shot the victim because the victim tried to run over him with the van.

DENIAL OF NEW TRIAL
By his first four assignments of error, defendant submits that the trial court erred by denying his motion for a new trial. In assignment of error number one, defendant contends the court's ruling prohibiting him from introducing evidence of the victim's violent character was erroneous and, therefore, he was entitled to a new trial. In assignments of error two and three, defendant argues that the court erred by denying his motion for new trial based upon newly discovered evidence. In assignment of error number four, defendant complains of the trial court's ruling denying his motion for new trial in which he claimed a state witness gave perjured testimony.

EVIDENCE OF VICTIM'S VIOLENT PROPENSITY
During the trial, defendant sought to introduce evidence of the victim's reputation for violence. Out of the presence of the jury, defendant took the stand and testified that, after he saw the victim with his wife and "had a few words" with him, the victim told him to "wait a damn minute" and reached under the seat of the vehicle. Defendant claimed he ran to his wife's car (to which she had apparently fled at the beginning of the encounter), grabbed the keys to unlock the trunk, and removed his gun. As he retrieved the rifle, he saw the van veer toward him and heard the victim "hollering." Then he shot the victim. On cross-examination, defendant admitted that the van had veered from him as it neared him.
After the defendant's testimony, the court ruled that defendant had not established that the victim made an overt act toward defendant and, therefore, he had not laid a sufficient foundation to bring forth evidence of the victim's character. Defendant now claims that an overt act was established through his testimony that the victim chased him through the park; and the court erred by ruling that he could *668 not introduce evidence of the victim's violent character.
La.R.S. 15:482 provides for the introduction of evidence of the character of the victim of an offense in certain limited situations. "In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against [the] accused is not admissible." Former La.R.S. 15:482 [repealed and reenacted in La.C.E. art. 404(A)(2) ]. This rule has been interpreted as requiring a foundation that the victim made a hostile demonstration or an overt act against the accused at the time of the incident, of such character as to create in the mind of a reasonable person the belief that he is in immediate danger of losing his life or suffering great bodily harm. State v. Williams, 410 So.2d 217 (La.1982); State v. Burton, 464 So.2d 421 (La.App. 1st Cir.), writ denied, 468 So.2d 570 (La.1985).
Herein, the only evidence that the victim had made an overt act against defendant at the time of the shooting was the testimony of defendant at trial. Defendant's wife, Clemenstine, testified that she saw the van coming toward her car; however, her testimony did not reflect she perceived this action as an overt act, and she claimed that she did not actually see the conflict. Defendant's trial testimony was contradicted by at least two state witnesses, Ida Mae Moore and Dontay Vessell, both of whom observed the incident and testified that defendant was armed when he emerged from his car when he first drove into the park. Moreover, in a statement taped by investigating officers shortly after the incident, defendant made no mention of the victim's attempt to run over him with the van. Thus, we find no error in the court's determination that defendant's testimony establishing an overt act at the time of the incident was not credible; and, therefore, we find no error in the court's ruling denying defendant's motion for a new trial on this ground. Accordingly, this assignment of error has no merit.

NEWLY DISCOVERED EVIDENCE
In assignment of error number two, defendant submits that the trial court erred by denying his motion for a new trial in which he claimed that he discovered after the trial that one of the state's witnesses, Dontay Vessell, was severely mentally retarded and had difficulty comprehending events. In assignment of error number three, defendant submits the trial court erred by denying his motion for a new trial based upon his discovery after the trial that Dontay Vessell was under the influence of drugs on the day of the incident. In assignment of error number four, defendant claims the trial court erred by denying his motion for a new trial after he established that Ida Mae Moore, one of the state's witnesses, lied during her trial testimony.
Dontay Vessell, who was fifteen years of age of the time of trial, testified that he was in the park and observed the altercation. His testimony was essentially corroborated by the testimony of Ida Mae Moore.
At the hearing on defendant's motion for a new trial, he presented the testimony of Leona Deloach, an employee of the East Baton Rouge School Board, who related the results of various academic comprehension tests which Dontay Vessell had taken at Baker Middle School. Ms. Deloach testified that he "was deemed with an exceptionality [sic] of educationally handicapped being resource [sic] in three major courses, math, language arts, and reading." She related that he attended special classes in those areas, but attended regular science, social studies, physical education, and elective classes. Ms. Deloach further related that, although Dontay could not read well, tests revealed that his vision was normal; and he could observe incidents and relate what he saw. Ms. Deloach specifically testified that Dontay Vessell is not severely mentally retarded.
Defendant also presented the testimony of Dontay Vessell's mother, Gail Vessell. Ms. Vessell testified that her son did not have difficulty comprehending things that he saw and events that were related to him.
*669 Finally, defendant called Dontay Vessell. Defendant asked him if he knew who was the President of the United States or the Governor of the State of Louisiana, and Dontay was unable to answer. Defendant also asked if he knew who was the Mayor of the City of Baton Rouge, and the witness answered incorrectly. He testified, however, that he knew the difference between the truth and a lie and that, when he testified at the trial, he did not lie about the events he related.
In support of defendant's claim that he had discovered after the trial that Dontay Vessell had been seen under the influence of drugs on the date of the incident, defendant presented the testimony of Clemenstine Clark, defendant's wife, who had testified for the state at trial and had been declared a hostile witness. Ms. Clark claimed that she had seen Dontay Vessell smoking marijuana as he sat on a small bridge in the park on the day of the shooting. She testified that she had not been able to smell marijuana, but she observed that his eyes were red and he appeared to be smoking and "snuffing" while he sat on the bridge.
In order to establish his claim that he was entitled to a new trial because of the perjured testimony of a state witness, defendant called Ida Mae Moore, who had testified at trial that she lived "about" two houses from the park. Defendant contended that she actually lived six houses from the park, and her view would have been distorted by the greater distance. At the hearing, Ms. Moore was unable to relate the actual number of houses between her home and the park. She claimed, however, that she had testified truthfully at the trial and had actually seen the events to which she testified.
In a motion for new trial based upon the discovery of new and material evidence, the burden is on the defendant to show that the new evidence was not discoverable prior to or during trial and that, if the evidence had been introduced at trial, the new evidence probably would have caused the trier of fact to reach a different verdict. State v. Spears, 504 So.2d 974 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987). In evaluating whether or not the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Spears, 504 So.2d at 979. A motion for a new trial is properly rejected when it is based on evidence which should have, with reasonable diligence, been discovered before or during the trial. State v. Marcal, 388 So.2d 656 (La.1980), cert. denied, 451 U.S. 977, 101 S.Ct. 2300, 68 L.Ed.2d 834 (1981). The trial court's denial of a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Buchanan, 439 So.2d 576 (La.App. 1st Cir.1983).
With respect to his claim that the court erred by denying his motion for a new trial based upon the discovery that Dontay Vessell is severely mentally retarded, defendant essentially contends Dontay Vessell was not a competent witness. Initially, we note that defendant's claim is based on information which, with reasonable diligence, could have been discovered before or during the trial. Moreover, the evidence presented by defendant does not support his claim that Dontay is severely mentally retarded. Defendant's witness, Ms. Deloach, specifically testified that he is not severely mentally retarded, but may have a problem comprehending some academic subjects. Other witnesses related that Dontay Vessell did not have difficulty understanding events that he saw or relating his observations. Therefore, we find no error in the trial court's ruling denying defendant's motion for a new trial urged on this ground.
Further, we find no merit to defendant's claim that the court erred by denying his motion for a new trial based on his discovery that Dontay Vessell was smoking marijuana at the time of the incident. Again, we note that, with due diligence, this matter could easily have been discovered before or during the trial. Moreover, when asked if he was smoking marijuana *670 at the time, Dontay replied that he was not. Mrs. Clark's testimony concerning his drug use was limited and seriously flawed by her inability to see, smell, or otherwise detect marijuana in use. Accordingly, we find no merit to this assignment of error.
Finally, we find no merit to defendant's claim that he was entitled to a new trial upon his discovery that Ida Mae Moore had not testified truthfully at the trial. Defendant does not specify whether this motion was founded upon a claim of newly discovered evidence, a claim of a legal defect in the proceeding, or a claim that the ends of justice would be served by the granting of a new trial. From his argument, however, we infer that defendant intended to claim the discovery that Ms. Moore had not testified truthfully was newly discovered evidence; and accordingly, we review his argument under that standard.
In State v. Spears, this Court considered the defendant's claim that he was entitled to a new trial because of newly discovered evidence that one of the state's witnesses committed perjury during the trial. Therein, the witness testified that she had ended her relationship with the defendant two years before the events which resulted in the defendant's prosecution for second degree murder. During the trial, the defendant attempted to impeach the witness's credibility by producing a note addressed to him allegedly written by the witness; and she denied having written it. At the hearing on the motion for a new trial, the defendant introduced this note, several other letters also allegedly written to him by the witness, and the testimony of an expert, who concluded that all of the letters had been written by the same person. However, we found the defendant had failed to show that the new evidence could not have been discovered before trial by the exercise of due diligence. We further found that, even if the defendant had been surprised by the witness's testimony that she had not written the note, he could have requested a recess in order to obtain expert testimony concerning her possible authorship.
Herein, it is clear that defendant could have obtained information concerning the distance between the location from which Ms. Moore observed the altercation and the park before the trial or during her testimony. At the very least, he could have investigated the distance after she revealed her residential address in her testimony. Therefore, we find that defendant failed to show that this evidence could not have been discovered before or during the trial with due diligence.
In any event, we find no merit to defendant's contention that the jury would have been less likely to believe Ms. Moore's testimony if the jurors had been aware that she lived six houses from the park. Ms. Moore testified that she saw defendant emerge from his vehicle with a long stick-like object; and shortly thereafter she heard a sound similar to the explosion of a firecracker. Nothing in her testimony indicates that the actual distance from which she observed the incident affected her visibility or her ability to discern the events to which she testified. Therefore, we find no error in the court's denial of defendant's motion for a new trial urged on this ground.
Accordingly, we find no merit to defendant's claims that he was entitled to a new trial. These assignments of error have no merit.

SCOPE OF REBUTTAL TESTIMONY
In assignment of error number five, defendant submits that the trial court erred by permitting the state to replay all of the statement he made to investigating officers on the date of the offense. The statement was played in its entirety during the state's case-in-chief. After defendant testified on his own behalf and claimed that several of the events related in that statement were untrue, but were products of the stress of the incident, the state played the entire tape again in rebuttal. Defendant objected, claiming that playing the entire statement would be prejudicial and that the state was entitled to play only those portions of the tape which contradicted defendant's trial testimony. Noting that the recording *671 was only twenty-six minutes long and that it would delay the proceedings unnecessarily to re-tape and play only the portions contradicted by defendant's testimony, the court permitted the state to replay the entire statement. Defendant now claims this recording simply rehashed the testimony of the state's case-in-chief and constituted improper rebuttal evidence.
Generally, rebuttal evidence is evidence offered to explain, repel, counteract, or disprove facts given in evidence by the adverse party. State v. Kimble, 546 So.2d 834 (La.App. 1st Cir.1989). The determination of whether or not the evidence is rebuttal evidence, and therefore admissible, is an issue which is addressed to the sound discretion of the trial court. Id.
A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. It has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. La.C.Cr.P. art. 17.
We find that the court's determination that the entire statement constituted proper rebuttal argument was a proper exercise of the court's inherent power to insure orderly and expeditious proceedings and was not an abuse of discretion. It is clear that the time necessary to re-record only certain sections of the tape would have unnecessarily delayed the proceedings and would have served no purpose. Moreover, defendant could not have been prejudiced by the introduction of the entire statement. Accordingly, this assignment of error has no merit.

SUFFICIENCY OF THE EVIDENCE
In assignments of error six, eight, and nine, defendant submits that the evidence is not sufficient to sustain the verdict. The standard of review for the sufficiency of the evidence is whether or not any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the state proved each element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard was codified in La.C. Cr.P. art. 821. See State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). Defendant filed a motion for post-verdict judgment of acquittal in which he claimed the evidence was insufficient.
Defendant claims his testimony established that he acted in heat of passion after being provoked by the victim, who had reached under his seat as though to remove a weapon and had driven his van towards him. Defendant further contends that his evidence established that he was unarmed when he initially approached the victim and that he armed himself only after a confrontation with the victim; thus, he should have been convicted only of manslaughter or acquitted because the shooting was in self-defense. Finally, defendant claims that Dontay Vessell's testimony that he observed defendant walk up to the victim's van and shoot him contains discrepancies and, therefore, is not credible.
Dontay Vessell testified that, as he crossed the park on his bicycle, he saw a woman standing beside a white van. She stepped away from the van when defendant drove up. He saw the defendant take a rifle from the back seat of his car, take a few steps back, and then fire through the driver's window of the van. The man in the van attempted to drive out of the park, and the woman started running. After the van was stopped by a fence, defendant shot into the van again. Then he threw the gun on the seat of his car and "took off." Dontay specifically testified that the victim never tried to run over defendant or drive the van at him.
Ida Mae Moore testified that her attention was called to the park because she saw a speeding car drive past her house, and she noted the car because of its speed. She watched as the driver pulled into the park, pulled a black stick-like object from his car and walked into the park with it. She heard about two or three shots; then she saw him walk back to the car, put the *672 object in the car, and drive away. Shortly thereafter, she heard a woman screaming for someone to call an ambulance and the police because her husband had just shot a man.
The state also presented the testimony of Deputy Randolph Scott. Deputy Scott, an acquaintance of defendant, received a call from him in which defendant stated he was in trouble because he had just "smoked" his wife and a friend of hers. He explained that he had shot them and told Deputy Scott that he wanted to turn himself into police custody. Thereafter, defendant gave a statement in which he claimed that he shot the victim when he saw the victim "hugged up" with his wife. Defendant did not claim in that statement that he shot the victim because the victim tried to run over him.
The trier of fact can accept or reject, in whole or in part, the testimony of any witness. State v. Thompson, 543 So.2d 1132 (La.App. 1st Cir.1989). This Court on appeal will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. State v. Matthews, 450 So.2d 644 (La.1984).
Herein, the jury obviously believed the testimony of the state's witnesses who claimed that defendant armed himself before approaching the victim and discredited defendant's claim that the victim initiated the confrontation. Accordingly, the jury's determination that the shooting did not occur in the heat of passion is amply supported by the record.
When a defendant claims self-defense in a homicide case, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. State v. Garcia, 483 So.2d 953 (La.1986). However, "[a] person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." La.R.S. 14:21. A homicide is justifiable only "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself...." La.R.S. 14:20(1). For appellate purposes, the standard of review of a claim of self-defense is whether or not a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Matthews, 464 So.2d 298 (La.1985).
Herein, the testimony of Ida Mae Moore and Dontay Vessell established that defendant armed himself before he approached the victim and that the victim did not make an aggressive move toward defendant. Accordingly, defendant is not entitled to claim self-defense. Moreover, the evidence presented by the state, including defendant's statement taped soon after the events, establishes that defendant shot an unarmed victim without provocation. Accordingly, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. These assignments of error have no merit.

CLOSING ARGUMENT
In assignment of error number seven, defendant submits that the trial court erred by denying his motion for a post-verdict judgment of acquittal based on the closing remarks of the assistant district attorney. Defendant claimed that, during his closing address, the assistant district attorney told the jury that he did not know what had happened in the shooting incident or how the victim died but that the jury should, nevertheless, return a verdict of guilty.
A motion for a post-verdict judgment of acquittal is the method by which the accused can raise the issue of the sufficiency of the evidence supporting his conviction. See La.C.Cr.P. art. 821. It is not a procedural device through which a defendant can set forth irregularities relating to the proceedings in which he was convicted.
The proper method for raising the issue of improper closing remarks which rendered *673 any subsequent verdict fatally defective is by motion for mistrial urged at the time of the remark. Herein, defendant designated for transcription only the trial testimony and motions heard by the trial court; thus, he failed to include the closing remarks of the state's attorney in the record in order to permit this Court's review. See La.C.Cr.P. art. 914.1. Nevertheless, the minute entries of this proceeding do not reflect that defendant objected at any time during the closing remarks or immediately thereafter. "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." La.C.Cr.P. art. 841. Accordingly, we find no merit to this assignment of error.
CONVICTION AFFIRMED.