632 So.2d 294 (1993)
STATE of Louisiana
v.
Larry MATTHEWS[1] a/k/a Larry Lewis.
No. 93 KA 0275.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
Rehearing Denied March 21, 1994.
*295 Stephen E. Caillouet, Asst. Dist. Atty., Thibodaux, for plaintiff-appellee State.
Wayne D. Mancuso, Harahan, for defendant-appellant Larry Matthews a/k/a Larry Lewis.
Before WATKINS, SHORTESS and FOGG, JJ.
WATKINS, Judge.
Defendant, Larry Matthews, a/k/a Larry Lewis, was charged by grand jury indictment with three counts of distribution of cocaine, in violation of LSA-R.S. 40:967. He pled not guilty and, after a jury trial, was found guilty as charged. Defendant was sentenced to a term of imprisonment of 240 months (20 years) on each count, to be served concurrently, with credit for time served. Defendant appeals, urging 23 assignments of error. Assignment of error number 16 was not briefed on appeal and, therefore, is considered abandoned. Uniform Rules-Courts of Appeal, Rule 2-12.4.

FACTS
On July 18, July 19, and August 17 of 1991, defendant sold rock cocaine to undercover police officers. The following facts were revealed at trial. Sergeant Drew David of the Vermillion Parish Sheriff's Office was assigned to the Lafourche Parish Sheriff's Office to work as an undercover drug agent. On July 18, 1991, Sgt. David was paired with a confidential informant, Michael Breaux, who introduced him to defendant. Sgt. David and Mr. Breaux were in the parking *296 lot of a convenience store in Thibodaux, Louisiana, when defendant rode up on his bicycle. Mr. Breaux introduced defendant to Sgt. David and asked defendant if he had any "stones" (crack cocaine). Defendant responded that he did not have any at that time but, if they took him for a ride, he could get some. Defendant loaded his bicycle into Sgt. David's vehicle, and all three men drove down Martin Luther King Street, Thibodaux, Louisiana. Defendant told them to stop the car, and he exited the vehicle and was gone for about two minutes. Sgt. David testified that he did not know where defendant went but, when he returned, he had one rock of cocaine, for which Sgt. David paid him $30.
On July 19, 1991, Sgt. David was riding in his vehicle around the Midland Projects area when he saw defendant. Sgt. David drove up to defendant and asked him if he had any "stones." Defendant replied "no" but knew where to get some and entered Sgt. David's vehicle. They traveled down Barbier Street, and defendant told him to stop. Defendant told Sgt. David to give him $50 and he would return with a rock. Sgt. David gave defendant the money; defendant left the vehicle and then returned with a rock.
Officer Gary Stevenson of the Baldwin Police Department testified that he was on loan to the Lafourche Parish Drug Task Force and paired up with a confidential informant (CI), whose identity was not revealed at trial. On August 17, 1991, he and the CI were driving around in Thibodaux, Louisiana, when the CI saw defendant and called him over. Defendant asked him what they were looking for; and Officer Stevenson replied a "20," meaning a $20 rock of cocaine. Defendant opened his hand and revealed about five rocks of cocaine in his palm. Defendant gave Officer Stevenson one rock, and Officer Stevenson gave defendant $20. Subsequently, defendant was arrested.

ASSIGNMENTS OF ERROR NUMBERS ONE, TWO AND TWENTY-TWO:
In these assignments of error, defendant contends that the jurisdiction of the trial court was not established. Specifically, in assignments of error numbers one and two, defendant alleges that the state failed to prove that the offenses occurred in Lafourche Parish and that the prosecutor did not state in his opening statement that he had to prove that the crimes occurred in Lafourche Parish. In assignment of error number 22, defendant alleges that the trial court erred by failing to instruct the jury that, in order to convict, they had to find that defendant was guilty and that the offenses occurred in Lafourche Parish.
[1] LSA-C.Cr.P. art. 615 provides:
Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.
Because the defendant did not file a motion to quash raising venue as an issue, we find no merit to his argument.
[2] LSA-C.Cr.P. art. 766 provides:
The opening statement of the state shall explain the rature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
Article 615 clearly states that the venue shall not be considered an essential element to be proven by the state at trial. Article 766 does not require the state, in its opening statement, to address the question of venue.
Defendant did not object to the jury instructions given by the trial court and did not submit his own instructions to be given. We find that defendant cannot raise the question of venue for the first time on appeal. Therefore, these assignments of error are meritless.

ASSIGNMENT OF ERROR NUMBER THREE: Defendant asserts that the trial court erred by failing to tell the jury, during preliminary instructions, that defendant should be presumed innocent until proven guilty. Specifically, defendant contends that, after the jurors were sworn and before the commencement of trial, the trial court explained to them how the trial was to proceed but *297 failed to instruct them as to defendant's presumption of innocence.
LSA-C.Cr.P. art. 804 requires that a trial court shall charge the jury that an accused is presumed innocent until each element of the crime is proven beyond a reasonable doubt. We know of no requirement for a trial court to instruct the jury about the presumption of innocence during preliminary instructions. This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER FOUR:
In number four, defendant asserts that it was error for evidence to be admitted of defendant's prior drug dealings without notice to defendant under Prieur, LSA-C.Ev. art. 404(B) and former LSA-R.S. 15:445-446. Specifically, in his brief, defendant refers to the testimony of Michael Breaux.
During the cross-examination of Mr. Breaux by the defense, the following exchange occurred:
Q: Mr. Breaux, did you and Mr. Matthews ever smoke crack together?
A: Yes, we did.
Q: How often would you do that?
A: The Thursdays, Fridays, and Saturdays that I would see him.
....
Q: When you would get together with Larry on those Thursdays, Fridays and sometimes Saturday night, who would instigate the call? Would you call him?
A: Sometimes I would, and sometimes he'd call me.
Q: And you all would go get dope together?
A: We would.
During redirect examination of Mr. Breaux, the following exchange occurred:
Q: How many times in the four or five-month period before you went to work for the police did this man [defendant] go get you crack cocaine?
A: It was quite often. How many times? It's hard to say. I mean every time I wanted to use it that's about who I'd go to.
Q: And how many times were you using back then?
A: I was using Thursday, Friday, Saturday. Basically any time that I had the money to get it.
We note that during the entire examination of Michael Breaux, defendant did not make any objection. It is well established that a defendant is precluded from raising an issue on appeal unless it was objected to at the time of occurrence. LSA-C.Cr.P. art. 841; State v. Clark, 558 So.2d 665, 673 (La.App. 1st Cir.), writ denied, 564 So.2d 317 (La. 1990). Moreover, the state only questioned Mr. Breaux about the defendant's prior crimes after the issue was discussed by defense counsel on cross-examination. This assignment of error is meritless.

ASSIGNMENTS OF ERROR NUMBERS FIVE, SIX, NINE, TEN, ELEVEN, TWELVE, FOURTEEN, AND FIFTEEN:
In these assignments of error (all except number fifteen), defendant asserts that it was error for his inculpatory statements to be admitted into evidence without his first having received notice under LSA-C.Cr.P. art. 768. Specifically, in his brief, defendant refers to statements made to Officer David during the transactions.
Officer David related the events that occurred during the first drug purchase on July 18, 1991 (count 1):
After I was introduced, the confidential informant asked him [defendant] if he knew where any stones were, if he had any stones, "stones" meaning crack cocaine; it's a street slang for crack cocaine. Mr. Matthews advised us no, not at that time, but if we would take him for a ride, give him a ride, he can get us some.
....
Mr. Matthews advised me it was $30 for the rock.
Officer David further testified as to the events that took place during the drug purchase on July 19, 1991 (count 2):
I drove up to Mr. Matthews. I asked himI said, "Do you have any stones?" meaning crack cocaine. He advised me again, "No, but I know where to get some." At that time he entered my vehicle.

*298 ....
He advised me if we took a ride that he knew where we can get some.... Well, he entered the vehicle and we traveled to the Midland Projects area, down Barbier Street. He advised me that he was going to get out a rock ofHe asked me what I wanted and I told him one rocka good-sized rock. He advised me they were selling for $50 a stoneit would be $50 for the crack cocaine.
....
[H]e [defendant] said, "That's cool." He said, "I wanted to see if you were legit." [defendant had asked Officer David a question to see if he was an undercover policeman.]
....
He [defendant] advised me if I'd give him a rideif we gave him a ridethat he could get it [cocaine] for us.
We note that at no time during Officer's David's testimony did defendant make any objections. Accordingly, the defendant is precluded from raising this issue for the first time on appeal. LSA-C.Cr.P. art. 841; State v. Clark, 558 So.2d 665, 673 (La.App. 1st Cir.), writ denied, 564 So.2d 317 (La.1990). Further, we note that Officer David's testimony relating the statements made by the defendant at the time of the charged crimes constitutes res gestae as defined by former LSA-R.S. 15:447 and LSA-R.S. 15:448. See now LSA-C.E. Arts. 404, 803. Notice under LSA-C.Cr.P. art. 768 is not required when the statement introduced forms part of the res gestae. State v. Barnes, 414 So.2d 711, 714 (La.1982). We find these assignments of error meritless.
In assignment of error number fifteen, defendant asserts that it was error to admit into evidence inculpatory statements made to Officer Gary Stevenson without first giving defendant notice under LSA-C.Cr.P. art. 768. However, in his brief, defendant does not address any testimony of Officer Stevenson. All the references in defendant's argument are to testimony from Officer David. Furthermore, we note that Officer Stevenson's testimony also relates statements which form part of the res gestae of the drug transaction between defendant and Officer Stevenson. We have already discussed this issue, and for the same reasons we find this assignment of error meritless.

ASSIGNMENT OF ERROR NUMBER SEVEN:
Defendant asserts that the trial court erred by permitting Officer David to testify without first being qualified as an expert. Specifically in his brief, defendant contends that Officer David testified as to the method of operation of big and small drug dealers and how drug deals operate in general. Because Officer David was not qualified as defendant suggests, as an expert, his opinion which prejudiced defendant should not have been introduced into evidence.
We note that defendant did not make any objections during the testimony of Officer David. Under our well-established jurisprudence and LSA-C.Cr.P. art. 841, defendant is precluded from raising this issue for the first time on appeal. State v. Clark, 558 So.2d at 673.
Moreover, for the reasons that follow, we find that the trial court committed no error. Under the Louisiana Code of Evidence, it was not necessary to qualify Officer David as an expert in order to permit his testimony. Article 701 permits a lay witness to testify as to his opinions or inferences as long as they are limited to those opinions or inferences which are rationally based on the perception of the witness and are helpful to a clear understanding of his testimony or determination of a fact at issue. Officer David testified that he had worked for the Vermillion Parish Sheriff's Office for three years and had spent a little over two years working as an undercover narcotics officer. Officer David testified that it was not unusual for someone selling crack cocaine to have to go somewhere to get it before completing a sale. Officer David positively identified defendant as the person who sold him the cocaine. However, this situation differs from a police officer's testimony that concludes for the jury that defendant is guilty. See State v. Montana, 421 So.2d 895, 899-900 (La.1982). We have reviewed the testimony and find that the witness did not exceed permissible limits.
*299 For these reasons, this assignment of error is meritless.

ASSIGNMENTS OF ERROR NUMBERS EIGHT AND THIRTEEN:
Defendant asserts that the trial court erred by admitting into evidence Officer David's testimony about cocaine and the envelopes containing the drug. Specifically, defendant contends that the cocaine was not in the same state it was in when it was collected and that a sufficient chain of custody was not established.

CHAIN OF CUSTODY
During Officer David's testimony, he opened an envelope from the State Police Crime Laboratory, marked "state exhibit 1." Officer David identified the envelope as the one that was tagged in his presence by Agent Gonzales after Officer David turned over to him the suspected cocaine he purchased from defendant on July 18, 1991. Officer David further testified that he recognized the case number on the envelope to be in Agent Gonzales' handwriting and that his own handwriting on the envelope states "Martin Luther King Street, $30. One rock. 11:37 p.m. Larry Matthews." Officer David continued his testimony and identified another envelope, "state exhibit 2," as the one in which Agent Gonzales put the suspected cocaine Officer David bought from defendant on July 19, 1991.
Agent Octavio Gonzales testified that he is employed by the Thibodaux Police Department, assigned to the Lafourche Parish Drug Task Force and was in command of operations on the nights defendant sold the cocaine. Agent Gonzales testified that Officer David made two cocaine purchases from defendant and turned the evidence over to him. Agent Gonzales further testified that, in Officer David's presence, he sealed the evidence in envelopes, tagged it and turned it over to Detective Carter, the evidence custodian, according to standard procedure.
Detective Ransom "Buck" Carter testified that he is the evidence custodian for all narcotic evidence for the Lafourche Parish Sheriff's Office. Detective Carter testified and described the procedure followed by all personnel who handle evidence. He testified that the officer writes the case number on the envelope together with the suspect's name. Then the officer fills out a form requesting the State Police Crime Lab to analyze the evidence. The evidence, which has been sealed, is placed in the evidence vault until it is transported to the laboratory in Baton Rouge, Louisiana, for analysis. When the evidence is picked up from the laboratory, it has been re-sealed by the laboratory and is placed in the evidence vault until it is needed for trial. Detective Carter identified the envelopes as containing the suspected cocaine purchased from defendant on July 18-19, 1991.
Officer Paul Lirette, Jr. of the Lafourche Parish Sheriff's Office testified that he took the evidence from the vault and transported it to the State Police Crime Laboratory in Baton Rouge. Once at the laboratory, Officer Lirette placed a new seal on the envelope, dated it and initialed it. When he received the evidence back, he transported it to the Sheriff's Office and placed it in Detective Carter's hands, as evidenced by the date on the envelope and Detective Carter's initials. Detective Carter then placed the evidence in the vault.
Article 901(A) of the Louisiana Code of Evidence establishes the general law relative to authenticity:
The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
To properly identify evidence at trial, the identification can be visual or it can be by chain of custody of an object. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. A continuous chain of custody is not essential to enable the state to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized. State v. Spooner, 550 So.2d 1289, 1304 (La.App. 1st Cir.1989), writ denied, 566 So.2d 394 (La.1990).

*300 EVIDENCE IN DIFFERENT FORM
When identifying the evidence, Officer David explained that the reason some of the cocaine was in powder form was because it must have broken during its transportation to Baton Rouge, Louisiana, or some was crushed as part of its testing. Detective Carter testified that sometimes the cocaine is powdery depending on what element was used as a base to form the rock.
In his brief, defendant argues that Officer David was unable to identify the cocaine as the same cocaine he purchased, because some of it was now powdery and no longer in rock form. Defendant also argued that the chain of custody was not sufficiently established to support Officer David's testimony. As we have already discussed, a lack of positive identification goes to the weight of the evidence rather than to its admissibility. Again we note that the defendant did not object to the introduction into evidence of the cocaine and hence he is precluded from raising this issue for the first time on appeal. LSA-C.Cr.P. art. 841; State v. Clark, 558 So.2d at 673. Furthermore, the state properly established that the cocaine introduced into evidence was the same cocaine purchased from defendant and satisfactorily explained why some of it was in powder form. For the reasons herein stated, these assignments of error are meritless.

ASSIGNMENTS OF ERROR NUMBERS SEVENTEEN AND NINETEEN:
Defendant asserts that it was error for the trial court to permit Detective Ransom Carter to testify to the chemical analysis of the cocaine in evidence without first being qualified as an expert, and to permit Officer Paul Lirette to testify as to the contents of the State Police Crime Laboratory reports. Specifically, defendant contends that it was improper for Detective Carter and Officer Lirette to testify as to the contents of the reports prepared by an expert at the laboratory stating that the substance tested was cocaine.
LSA-R.S. 15:499-501 provide for the introduction of evidence from criminalistics laboratories. The statutes provide that all criminalistics laboratories are authorized to make proof of examination and analysis of physical evidence by the certificate of the person in charge of the facility in which such examination and analysis is made. If the certificate from the laboratory contains the required statutory information, the certificate shall be prima facie proof of the facts shown thereon unless the defendant subpoenas the preparer of the certificate. This procedure relieves the proponent of the evidence of the burden of having to produce the person who performed any tests on the evidence but allows the opposing party to subpoena under cross-examination the person performing the tests. See State v. Davis, 438 So.2d 1288, 1290 (La.App. 3rd Cir.1983), writ denied, 445 So.2d 455 (La.1984). We note that, at trial, defendant did not object to either officer's testimony or to the introduction into evidence of the State Police Crime Laboratory reports; defendant is precluded from raising this issue for the first time on appeal. LSA-C.Cr.P. art. 841; State v. Clark, 558 So.2d 665, 673 (La.App. 1st Cir.), writ denied, 564 So.2d 317 (La.1990). Moreover, under the clear language of the statute, we find it was proper for the two police officers to testify as to the contents of the State Police Crime Laboratory certificate because the persons who prepared the reports were not subpoenaed by defendant. These assignments of error are meritless.

ASSIGNMENT OF ERROR NUMBER EIGHTEEN:
Defendant asserts that LSA-R.S. 15:499-501 are unconstitutional because they shift the burden of proof from the state to the defendant. Specifically, defendant contends that the statutes require the defendant to subpoena the preparer of the laboratory report, thus placing a burden on him to put on evidence in order to maintain his constitutional right to confront his accusers.
LSA-R.S. 15:499 authorizes criminalistics laboratories to "make proof of examination and analysis of physical evidence" by use of a certification which includes certain specified information. In criminal cases, the trial court is required to receive as evidence any certificate, issued in accordance with LSA-R.S. 15:499, as "prima facie proof of the facts shown thereon, and as prima facie proof of proper custody of the physical evidence...."
*301 LSA-R.S. 15:500. For the state to be able to introduce the certificate into evidence, it must give written notice of its intent to offer proof by the certificate at least ten days before the trial begins. LSA-R.S. 15:501(A). After receiving the state's notice, if the defendant desires to cross-examine the technician who prepared the report, he must comply with the following provisions:
The party against whom such certificate is offered shall be permitted to subpoena on cross-examination, the person who performed the examination or analysis of the evidence. If the subpoena is requested at least five days prior to the commencement of trial or the person subpoenaed responds to the subpoena, the certificate shall not be prima facie proof of its contents or of proper custody.

LSA-R.S. 15:501(B)(1).
LSA-R.S. 15:501(B) thus assures the criminal defendant's constitutional right of confrontation. See LSA-Const. art. I, § 16. The procedure established by this statute relieves the party desiring to introduce the certificate of the burden of having to produce the person who performed tests on the evidence but allows the opposing party to subpoena under cross-examination the person performing the tests. State v. Davis, 438 So.2d 1288, 1290 (La.App.3d Cir.1983), writ denied, 445 So.2d 455 (La.1984). The purpose of these statutes also has been described as follows:
to inform a defendant that such a certificate exists and that it will be used against him. It prevents any confusion or surprise, and it aids the defendant in preparing an adequate defense. It also relieves crime lab personnel from the necessity of appearing at trial when there is no real question or issue surrounding the validity of the analysis performed by the crime lab technician.
State v. Mims, 524 So.2d 526, 536 (La.App. 2d Cir.), writ denied, 531 So.2d 267 (La. 1988). The statute does not relieve the state of its burden to go forward with proof of the elements of the crime. See City of Shreveport v. Burroughs, 511 So.2d 782, 783 (La. App. 2d Cir.1987).
The language of LSA-R.S. 15:501(B) is clear and unambiguous. If the person against whom a certificate of a criminalistics laboratory is to be offered has "requested" a subpoena of the person who analyzed the evidence at least five days before commencement of trial as defined in LSA-C.Cr.P. art. 761, or if the person subpoenaed responds to the subpoena although it was not timely requested, then the certificate "shall not be" prima facie proof of its contents. See State v. Landry, 583 So.2d 911, 912-913 (La.App. 1st Cir.1991).
We do not find that the requirement that defendant request the preparer of the certificate to testify is tantamount to requiring defendant to put on the proof; requirement is not an onerous burden that deprives defendant of any constitutional rights. For these reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER TWENTY:
In this assignment of error, defendant asserts: "In connection with the aforementioned arguments set forth in previous assignment [sic] of errors related to the state's evidence it was erred [sic] on the part of the court to allow state's exhibits previously marked as 1, 2 and 3 [the cocaine] into evidence."
Defendant's argument is a reference to the other assigned errors addressed herein. Having found no merit to those assignments of error, we likewise find no merit to defendant's cumulation of errors argument.

ASSIGNMENT OF ERROR NUMBER TWENTY-ONE:
Defendant asserts that a portion of the closing argument by the prosecutor was outside the proper scope and was prejudicial to him. Specifically, defendant argues that the following remark was inflammatory:
This doesn't look like very much (counsel indicates drug packets) but the amount of destruction this is doing day in and day out is killing parts of our society. That's why it's against the law.
During the jury instructions, the trial court stated:

*302 You must determine the facts only from the evidence presented. The evidence which you should consider consists of the testimony of witness [sic] and the exhibits which the Court has permitted the parties to introduce.
....
The opening statement and the closing arguments are not to be consider [sic] as evidence.
We note that defendant did not object during closing argument or request a mistrial.
Before a verdict will be overturned on the basis of improper argument, this court must be thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Crocker, 551 So.2d 707, 714 (La.App. 1st Cir.1989). While we do not approve of the prosecutor's remark, we note that the trial court did inform the jury that these remarks were not to be considered as evidence. We also note that there was overwhelming evidence of defendant's guilt. Therefore, we conclude that the prosecutor's remark did not influence the jury and contribute to its verdicts. This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER TWENTY-THREE:
Although not discussed in his brief, defendant assigned as error a request to this court that, if his case was not in a posture for appeal, this court convert it to a writ application. This request is not an assignment of error. Moreover, defendant's case was in an appeal posture, and we have treated it as such.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] We note in some instances in the record that the name of the defendant is also spelled "Mathews."