966 So.2d 623 (2007)
STATE of Louisiana
v.
Herbert R. DERKINS, Jr.
No. 07-KA-151.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 2007.
*625 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Martin Belanger, Assistant District Attorneys, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney At Law, Thibodaux, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
EDWARD A. DUFRESNE, JR., Chief Judge.
On June 25, 2004, the Jefferson Parish District Attorney filed a bill of information charging defendant, Herbert R. Derkins, Jr., with distribution of cocaine, in violation of LSA-R.S. 40:967(A). Subsequent to pleading not guilty, defendant filed several pre-trial motions, including a motion to suppress identification which was denied. The matter proceeded to trial before a twelve person jury on December 14 and 15, 2004. After considering the evidence presented, the jury found defendant guilty as charged. Defendant filed a motion for new trial, which the trial court denied on March 9, 2005. On the same day, after defendant waived sentencing delays, the trial court sentenced him to ten years at hard labor with credit for time served.
The State subsequently filed a bill of information pursuant to LSA-R.S. 15:529.1, alleging defendant to be a multiple offender. After being advised of his multiple offender rights, defendant stipulated to being a second felony offender. The trial judge vacated defendant's original sentence and sentenced him as a second offender to twenty years at hard labor without benefit of probation or suspension of sentence. Defendant now appeals.

FACTS
This case involves a narcotics transaction that took place on January 29, 2004, between defendant and Agent Josh Bell,[1] an undercover officer with the Jefferson Parish Sheriff's Office. On that date, Agent Bell proceeded to 6613 Westbank Expressway in Jefferson Parish, an area known for its drug activity. When Officer Bell arrived at that location, he circled the area looking for a person from whom he could buy narcotics. The officer saw an individual, subsequently identified as defendant, and asked him for a "twenty."[2] Defendant originally said "no," but then called the officer back to make the sale. Agent Bell handed defendant a twenty dollar bill in pre-recorded U.S. currency, and in exchange, defendant gave the officer one off-white rock like substance. After driving out of the area, Officer Bell contacted the surveillance team that had been monitoring the transaction. He gave the surveillance team a description of the seller *626 including the fact that he was wearing a Cowboys' starter jacket. Agent Bell also informed them that the seller left in the backseat of a late 80's Grand Marquis that went onto the expressway. Subsequently, Agent Bell gave the videotape of the transaction and the drugs he purchased to Agent Billy Matranga, lead agent in the case and part of the surveillance team. Agent Matranga performed a preliminary field test on the substance which revealed the presence of cocaine. Further scientific analysis confirmed that the substance contained cocaine.
Immediately after the narcotics transaction was complete, Agent Matranga contacted patrol officer Deputy Ed Manix, gave him a description of the suspect, and asked him to get an identification through a field interview. The narcotics unit described the individual that needed to be identified as a black male, wearing grey sweats, and a Dallas Cowboys' football jacket, seated in the back of a beige late 80's Mercury Marquis. In response to the call, Deputy Manix stopped the suspect vehicle about five or six blocks from the transaction as a "suspicious persons stop." The vehicle was occupied by a male driver and two passengers, one male and one female, all of whom were black. Deputy Manix asked the occupants for identification, did a pat down for weapons, and ran a main check on N.C.I.C. for outstanding warrants and attachments. The N.C.I.C. check revealed an outstanding attachment on defendant involving a traffic violation and resisting arrest. After Deputy Manix arrested defendant on the outstanding attachment, he viewed the videotape of the drug buy and recognized defendant as the person that he stopped. Deputy Manix also identified defendant in court as the person he stopped on the date of the incident.
Approximately five weeks after the drug buy, on March 5, 2004, Agent Matranga compiled a photographic lineup for Agent Bell that included a picture of defendant. Agent Bell viewed the videotape of the drug transaction to refresh his memory before he viewed the photographic lineup. Thereafter, he identified defendant both in the photographic lineup and in court as the individual from whom he purchased the narcotics.
At trial, after the state rested, defense counsel called Sergeant Robert Harrison, a communications supervisor for 911, and Norman Donald, an alibi witness. Sergeant Harrison testified that the initial call from Deputy Manix, the officer who stopped defendant, was received at 3:09 p.m. Sergeant Harrison testified that he is confident that the times in the radio log are accurately kept.
Norman Donald testified that on January 29, 2004, he was driving his girlfriend and defendant to a restaurant when two Jefferson Parish police officers stopped him for a traffic violation. According to Donald, defendant was with him for about an hour before the traffic stop. He testified that defendant had not been selling cocaine prior to the stop, and he had not seen defendant with any cocaine that day. Further, although Donald could not remember what defendant was wearing at the time of the stop, he testified that defendant was not wearing a starter jacket with the hood up.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, defendant challenges the sufficiency of the evidence used to convict him of distribution of cocaine. He specifically argues that the evidence presented at trial regarding his identification was tainted and, therefore, insufficient to prove his identity, which was *627 necessary to convict him of distribution of cocaine.
The standard of review for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In addition to proving the statutory elements of the charged offense at trial, the State is required to prove defendant's identity as the perpetrator. Where the key issue is identification, the State must negate any reasonable probability of misidentification to carry its burden of proof. State v. Cobb, 02-967 (La.App. 5 Cir. 1/28/03), 839 So.2d 235, 238, writ denied, 03-747 (La.10/17/03), 855 So.2d 758.
The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. The trier of fact can accept or reject the testimony of any witness. State v. Johnson, 03-903 (La.App. 5 Cir. 12/9/03), 864 So.2d 645, 650. An appellate court does not evaluate the credibility of witnesses, nor should it overturn the trial court on its factual determination of guilt. State v. Jackson, 00-1014 (La. App. 5 Cir. 12/13/00), 778 So.2d 23, 30, writ denied, 01-0162 (La.11/21/01), 802 So.2d 629.
In the present case, defendant's challenge to the sufficiency of the evidence focuses on his identity as the perpetrator. He points to several facts to support his claim that he was misidentified as the seller of the narcotics. He also claims that the photographic identification by Agent Bell was suggestive and unreliable, leading to a likelihood of misidentification. We will first address defendant's claims relating to the suggestiveness of the identification procedure.
The defendant claims that Agent Bell could not have identified him as the seller of the drugs from the brief encounter that only lasted thirty seconds, especially since the seller's head was covered at the time. In addition, defendant contends that Agent Bell's photographic identification was unreliable, because it was made five weeks later after twenty or thirty other drug buys, and after Agent Bell viewed the videotape of the transaction to refresh his memory. In addition, Agent Bell testified that a still photograph generated from the videotape indicated that the seller had deep lines around his chin, a facial feature that defendant alleges he does not possess.
In challenging an identification procedure, the defendant must prove to the court that it was suggestive and that there was a substantial likelihood of misidentification. Even if the identification procedure is found to be suggestive, this alone does not violate due process. Rather, it is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. State v. Payne, 00-1171 (La.App. 5 Cir. 12/13/00), 777 So.2d 555, 558-559; State v. Raines, 00-1941 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 639, writ denied, 01-1906 (La.5/10/02), 815 So.2d 833.
The standard of review for identification procedures is fairness, and the linchpin in determining the admissibility of identification testimony is reliability. The factors to be considered in assessing reliability are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime *628 and the confrontation. Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. A court must consider the totality of the circumstances to determine whether an identification presents a substantial likelihood of misidentification. State v. Payne, 04-828 (La.App. 5 Cir. 12/14/04), 892 So.2d 51, 53; State v. Raines, 788 So.2d at 639; Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
In this case, we find that the officer's viewing of the videotape of the transaction before identifying defendant in a photographic lineup can be deemed suggestive; however, we conclude that it did not cause a substantial likelihood of misidentification. Agent Bell testified that he makes a point of looking at the face of the person from whom he buys drugs, in the undercover transactions, because he knows he will have to pick that person out in a lineup or testify in court in the narcotics case. Also, the face-to-face transaction took place during daylight hours, and Officer Bell had the opportunity to view defendant both when defendant first refused to sell him the drugs and then when defendant sold him the drugs. In addition, five weeks between the drug transaction and Agent Bell's photographic lineup identification apparently did not lead to the likelihood of misidentification. Agent Bell testified that he viewed the videotape of the drug transaction only to refresh his memory and he remembered the drug buy "pretty well" without viewing the videotape. Additionally, the fact that the transaction was recorded on videotape greatly reduces any risk of misidentification. We also note that the videotape was played for the jury at trial, and defense counsel was given the opportunity to cross-examine Agent Bell regarding the validity of his identification.
Having determined that the identification procedure did not lead to a substantial likelihood of misidentification, we will now address defendant's remaining claims relating to the sufficiency of the evidence. In one of his arguments, defendant asserts that there was a discrepancy at trial between the time of the drug sale and the time of the stop, making it impossible that it was defendant who sold the drugs. In addition, defendant claims that when he was later stopped he was not wearing a starter jacket with a hood like the one that covered the drug seller's head, nor did he have the pre-recorded bill used to make the undercover buy. He notes that the starter jacket and the twenty dollar bill used in the undercover buy were never recovered as part of his property, regardless of the fact that the police did not check for these items at the jail. The defendant also notes that Agent Bell did not get the license plate of the vehicle in which the suspect rode, nor could he describe the other occupants of the vehicle.
We have reviewed these specific arguments and find them to be without merit. Regarding the time discrepancies, the jury was presented with the testimony of Agent Matranga that he set up the surveillance for the undercover buy at approximately 3:00 p.m. or 3:10 p.m. that day. Agent Bell testified that the undercover drug buy took place at exactly 3:13 p.m., according to the videotape recorded in his vehicle. Sergeant Robert Harrison, Communications Supervisor for the Jefferson Parish Sheriff's Office's 911 Center, testified the call for assistance came in at 3:09 p.m., but that times were approximate based upon the operator's typing skills. Deputy Manix testified that he responded to the call for assistance, at approximately 3:10 p.m. or 3:15 p.m. His recollection was that the stop occurred at 3:12 p.m. That was also the time of the stop stated on his arrest report, because that was the time that he *629 was given by headquarters. However, Agent Matranga testified that the times given in the police report were approximate, because they were taken off the videotape. The manually operated surveillance video equipment they used was unable to be calibrated. In addition, he suggested that the watches used by the other police officers involved in the undercover buy were likely to all have different times.
The jury was also presented with evidence about the starter jacket. Agent Bell testified that immediately after the transaction, he gave a description of the person who sold him the drugs, including that he wore a starter jacket. He also informed his surveillance team that the seller left in the backseat of a late 80's Grand Marquis that went onto the expressway. Agent Manix received a call for assistance concerning an individual that was described as a black male, wearing grey sweats, and a Dallas Cowboys' football jacket seated in the back of a late 80's Mercury Marquis. Deputy Manix stopped the vehicle that matched the description approximately five or six blocks from the location of the transaction. At the time of the stop, defendant, seated in the back seat, was wearing grey sweats and a Cowboys' starter jacket. After he arrested defendant on the outstanding attachment, Deputy Manix viewed the videotape of the drug buy and identified defendant as the individual that he stopped.
Also, while there was no evidence presented at trial that defendant was in possession of the pre-recorded twenty dollar bill used in the undercover buy, Agent Bell testified the pre-recorded money is rarely recovered; therefore it is not necessarily photocopied for identification purposes. Rather, the money is pre-recorded so that it can be used as an exhibit in court. Agent Matranga testified that the money was photocopied in order to allow them to affect an immediate arrest, or to keep track of the money. He responded that it was not customary for officers to go into the correctional center to recover items when there is a videotape of the drug buy.
In the present case, the jury was presented with the direct testimony of Agent Bell that he purchased one off-white rock object from defendant. Agent Bell subsequently identified defendant both in a photographic lineup and in court as the person who sold him the drugs. The transaction was videotaped and played for the jury. Finally, the substance that Agent Bell bought from defendant was tested and proved positive for the presence of cocaine. The jury also heard the evidence regarding the discrepancies in the time of the stop and the time of the transaction, as well as any conflicting testimony about the description of defendant. In reaching the guilty verdict, the jury obviously found the State's witnesses to be more credible, a determination which lies solely with the trier of fact. Under the circumstances, we find that the jury, after listening to the evidence and viewing the videotape, could have found beyond a reasonable doubt that defendant was guilty of distribution of cocaine.
In the present case, we have considered all of defendant's arguments involving the sufficiency of the evidence and his identification as the perpetrator of the offense and find them to be without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, defendant argues that the State failed to prove conclusively that the "rock" was cocaine. He admits that the lab report, which stated that the substance submitted for testing was cocaine, was accepted into evidence without any objection by the defense. Defendant argues for the first time *630 on appeal that the admission of the lab report without a stipulation or the testimony of lab analyst is unverified hearsay. He claims that the State should not have been able to rely on Agent Matranga's testimony that he submitted the drugs purchased during the undercover transaction to the crime lab.
Pursuant to LSA-R.S. 15:499, "all criminalistics laboratories . . . are authorized to make proof of examination and analysis of physical evidence by the certificate of the person in charge of the facility in which such examination and analysis is made." If the certificate from the laboratory contains the required statutory information, the certificate shall be prima facie proof of the facts shown thereon unless the defendant subpoenas the preparer of the certificate. State v. Matthews, 632 So.2d 294, 300 (La.App. 1 Cir.1993). This procedure relieves the proponent of the evidence of the burden of having to produce the person who performed any tests on the evidence but allows the opposing party to subpoena under cross-examination the person performing the tests. State v. Matthews, 632 So.2d at 302. The statutes pertaining to the submission of evidence from criminalistics laboratories do not unconstitutionally infringe upon defendant's constitutional right to confrontation, because the defendant merely has to subpoena the person who performed the analysis of the evidence. State v. Cunningham, 04-2200 (La.6/13/05), 903 So.2d 1110, 1121. If the defendant fails contemporaneously to object to the introduction into evidence of the State Police Crime Laboratory reports, the defendant is precluded from raising this issue for the first time on appeal. State v. Matthews, 632 So.2d at 300.
In the present case, like State v. Matthews, supra, the crime lab report was received into evidence without any objection from the defense. In addition, the record does not show that defendant subpoenaed the analyst who prepared the report. Therefore, defendant is precluded from raising this issue for the first time on appeal pursuant to LSA-C.Cr.P. art. 841. This assigned error is without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals that the record does not contain a ruling on defendant's motion to reconsider sentence. Normally, the trial court's failure to rule on a timely filed motion for reconsideration of sentence requires a remand. State v. Evans, 02-1108 (La.App. 5 Cir. 3/11/03), 844 So.2d 111, 114. Although the record does not contain a ruling on the motion, this court has received a copy of the March 28, 2007 minute entry, which stated that the trial court denied defendant's motion to reconsider sentence. Accordingly, for completeness purposes, we order that the record be supplemented with a ruling on defendant's motion to reconsider sentence.
For the reasons set forth herein, we affirm defendant's conviction and sentence and order the district court to supplement the appellate record with the ruling on defendant's motion to reconsider sentence.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Josh Bell is not the officer's actual name. His real name is not used for the officer's safety.
[2] Agent Bell testified that a "twenty" is slang for twenty dollars worth of crack cocaine. Agent Matranga testified that a "twenty" is one rock of crack cocaine.