546 So.2d 834 (1989)
STATE of Louisiana
v.
Charles Ray KIMBLE.
No. KA 88 1404.
Court of Appeal of Louisiana, First Circuit.
June 20, 1989.
*835 Charles V. Genco, Asst. Dist. Atty., Amite, for plaintiff-appellee.
Kenneth Sarama, Hammond, Charles M. Reid, Amite, for defendant-appellant.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
EDWARDS, Judge.
The defendant, Charles Ray Kimble, was charged by grand jury indictment with second degree murder, in violation of LSA-R.S. 14:30.1. He pled not guilty and, after trial by jury, was found guilty of the responsive verdict of manslaughter, a violation of LSA-R.S. 14:31. He received a sentence of fifteen years at hard labor, without benefit of probation, parole, or suspension of sentence.[1] The state filed a habitual offender bill and, after hearing, the defendant was adjudicated a habitual felony offender. The previous sentence was vacated and the trial court sentenced the defendant to thirty years at hard labor without benefit of probation, parole, or suspension of sentence.[2] The defendant has *836 appealed, alleging thirteen assignments of error,[3] as follows:
1. The trial court erred in refusing to grant the defendant's challenge for cause of a prospective juror.
2. The evidence was insufficient to support the defendant's conviction.
3. The trial court erred in allowing the introduction into evidence of photographs without the proper foundation being established.
4. The trial court erred in denying the defendant's motion to suppress a tape-recorded statement.
5. The trial court erred in allowing the introduction into evidence of the defendant's tape-recorded confession.
6. The trial court erred in denying the defendant's motion for a directed verdict.
7. The trial court erred in allowing the introduction into evidence of a tape-recorded statement by Edward McGary.
8. The trial court erred in denying defendant's motion to suppress the testimony of Lou Sherman, Jr.
9. The trial court erred in denying the defendant's motion for a mistrial.
10. The trial court erred in denying the defendant's motion for a mistrial.
11. The trial court erred in allowing the State to impeach its own witness.
12. The trial court erred in allowing the State to introduce into evidence the improper rebuttal testimony of Lou Sherman, Jr.
13. The defendant was denied a fair trial due to the cumulative impact of the errors noted above.

FACTS
At approximately 3:30 a.m. on August 31, 1985, a shooting occurred at the Touchdown Lounge in Tangipahoa Parish. The victim, Lionel Albritton, received a single gunshot wound to the chest and died in the emergency room of a local hospital. Detective Kerry Dangerfield of the Tangipahoa Parish Sheriff's Department began an investigation of the shooting. The investigation soon focused upon the defendant, who was arrested and charged with second degree murder.
At the trial, state witness Willie Ray Simmons testified that the defendant shot Lionel Albritton. A tape-recorded confession, in which the defendant admitted shooting the victim, was played to the jury. Another state witness, Allen Cook, testified that he did not know who shot the victim. However, after laying a foundation, the prosecutor was allowed to impeach Mr. Cook's trial testimony with a prior inconsistent tape-recorded statement wherein Mr. Cook stated that the defendant shot the victim.
After the state rested its case-in-chief, defense witness Edward McGary testified that it was he, not the defendant, who shot and killed the victim, Lionel Albritton. However, he admitted that he was presently serving a seventy-five year sentence for attempted second-degree murder at Hunt Correctional Center. Furthermore, the prosecutor impeached Mr. McGary's trial testimony by introducing a prior inconsistent tape-recorded statement wherein Mr. McGary identified the defendant as the person who shot the victim.
*837 The defendant testified that he was at the Touchdown Lounge on the night of the shooting. However, he testified that Mr. McGary fired the shot which killed Mr. Albritton. Defendant admitted making a prior tape-recorded confession to Detective Dangerfield but explained that he did so only to secure the release of his mother, Mrs. Nellie Kimble, who had been arrested and charged with obstruction of justice and accessory after the fact to second degree murder after she failed to surrender the suspected murder weapon to the authorities. The defendant testified that Detective Dangerfield promised to release his mother from jail if he confessed to the murder.
On rebuttal, Assistant District Attorney Lou Sherman, Jr., testified that, during negotiations with Mr. McGary on an unrelated criminal matter, Mr. McGary offered to make a deal. As part of the deal, Mr. McGary stated that the defendant had shot Mr. Albritton.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, defendant contends that the trial court erred in denying his challenge for cause of prospective juror, Esther Savoie, who indicated on voir dire that she is currently represented in a civil suit by Assistant District Attorney Barbara Cole.
Prior to Louisiana Acts 1983, No. 181, in order to prove reversible error, a defendant needed to show two things: (1) that the trial court erred in refusing to sustain a challenge for cause made by him, and (2) that he exhausted all of his peremptory challenges. See State v. Glaze, 439 So.2d 605, 606 (La.App. 1st Cir.1983). However, Act 181, § 1, of the 1983 Regular Session amended LSA-C.Cr.P. art. 800 by removing the requirement that a defendant exhaust all of his peremptory challenges before complaining of a ruling refusing to sustain a challenge for cause. State v. Robertson, 518 So.2d 579, 583 (La.App. 1st Cir.1987), cert. denied, 523 So.2d 227 (La.1988).
LSA-C.Cr.P. art. 797 provides that a juror may be excused for cause on either of the following pertinent grounds:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]
The trial court is vested with broad discretion in ruling on a challenge for cause, and that ruling will not be disturbed on appeal absent a showing of abuse of that discretion. Robertson, 518 So.2d at 583. Service on a criminal jury by one associated with law enforcement duties must be closely scrutinized and may justify a challenge for cause, although such association does not automatically disqualify a prospective juror. State v. Edwards, 459 So.2d 1291, 1293 (La.App. 1st Cir.1984). It is not the mere existence of a relationship between a prospective juror and a law enforcement officer or district attorney that will sustain a challenge for cause, instead, it is the prospective juror's ability or inability to remain fair and impartial which will determine whether or not a challenge for cause will be granted. See Robertson; Edwards; and State v. Sugar, 408 So.2d 1329 (La. 1982).
In the instant case, only a brief excerpt of the voir dire has been included in the record. Nevertheless, Ms. Savoie's answers indicated that she could be a fair and impartial juror. When questioned about her employment relationship with Ms. Cole, Ms. Savoie replied that she could be fair and decide the case solely upon the facts presented in court. Based on these responses, we conclude that the trial court properly refused to grant the defendant's *838 challenge for cause. This assignment of error has no merit.

ASSIGNMENTS OF ERROR NUMBERS TWO AND SIX
In assignment of error number two, the defendant contends that there was insufficient evidence to support his conviction of manslaughter. In assignment of error number six, the defendant contends that the trial court erred in denying his motion for a directed verdict at the close of the state's case-in-chief. Initially, we note that a motion for a judgment of acquittal is authorized only in cases tried by a judge alone. LSA-C.Cr.P. art. 778. A defendant is not entitled to a directed verdict of acquittal in a jury trial. State v. Corkern, 461 So.2d 1238, 1241 (La.App. 1st Cir.1984).
The proper procedural vehicle for raising the issue of the sufficiency of the evidence is by a motion for post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099, 1100-1101 (La.App. 1st Cir.1983). Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. The standard set forth in article 821 is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Although the defendant was charged with second degree murder, the jury found him guilty of the responsive verdict of manslaughter. In his brief to this court, the defendant contends that the state offered no direct evidence other than the recorded statement from the defendant which was obtained by coercion, threats and promises. He also notes that the defense offered evidence that Edward McGary was the person who shot Lionel Albritton. However, defendant's argument completely omits any reference to the testimony of State witness Willie Ray Simmons, who testified that he saw the defendant shoot Mr. Albritton. Also, the defendant does not mention the fact that Mr. McGary's trial testimony, in which he admitted shooting Mr. Albritton, was impeached through the introduction of a prior inconsistent tape-recorded statement wherein he stated that the defendant shot Mr. Albritton.
In this case, the jury was called upon to resolve conflicting testimony between state and defense witnesses in order to decide whether the defendant or Edward McGary shot the victim. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Richardson, 459 So.2d at 38. In finding the defendant guilty of manslaughter, the jury obviously accepted the testimony of the eyewitness Willie Ray Simmons, and concluded that the defendant shot the victim. The testimony by the defendant and Mr. McGary that Mr. McGary shot Lionel Albritton was rejected.
After a careful review of the record, we believe that a rational trier of fact, viewing all of the evidence as favorably to the prosecution as any rational factfinder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of manslaughter. See State v. Mussall, 523 So.2d 1305 (La.1988).[4]
These assignments of error have no merit.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, the defendant contends that the trial court erred *839 in allowing State exhibits numbers two, five, and six to be introduced into evidence over defense objection. State exhibit two consisted of pictures of the victim's body depicting the entrance and exit wounds caused by the bullet. State exhibit five also consisted of two photographs. One depicted the location of the bullet hole in the wall of the Touchdown Lounge and the other depicted the bloodstains on the floor where the victim fell after the shooting. State exhibit six was a single photograph depicting the front of the Touchdown Lounge as viewed from the parking lot. At the trial, the defense objected that the witness, Detective Kerry Dangerfield, had failed to testify that he had taken the above photographs or that he had been present at the morgue when the photographs in State exhibit two were taken. The trial court overruled the objection and allowed the photographs to be admitted into evidence.
Generally, photographs are admissible in evidence when they are shown to have been accurately taken, to be a correct representation of the subject in controversy, and when they shed light upon the matter before the court. State v. Robertson, 454 So.2d 205, 210 (La.App. 1st Cir.), cert. denied, 458 So.2d 487 (La.1984). It is well-settled that the photograph need not be identified by the person who took it to be admissible in evidence. State v. Leggett, 363 So.2d 434, 439 (La.1978).
In regard to state exhibits five and six, we note that Detective Dangerfield testified that he took pictures at the scene of the crime, although he did not specifically state that he had taken these particular photographs. However, Detective Dangerfield did testify that the photographs in State exhibits five and six fairly and accurately depicted the floor, wall, and outside of the Touchdown Lounge at the time he investigated the shooting. While Detective Dangerfield did not specifically testify that he had gone to the morgue where the victim's body was taken, he did testify that the photographs contained in state exhibit two fairly and accurately depicted the victim's body.
A proper foundation for admission in evidence of a photograph is laid when a witness having personal knowledge of the subject depicted by the photograph identifies it. Robertson, 454 So.2d at 210. We conclude that Detective Dangerfield's testimony provided a sufficient foundation for the introduction into evidence of the above photographs.
This assignment of error has no merit.

ASSIGNMENTS OF ERROR NUMBERS FOUR AND FIVE
In assignment of error number four, the defendant contends that the trial court erred in denying his motion to suppress a tape-recorded confession. In assignment of error number five, the defendant also maintains that the trial court erred in allowing the tape-recorded confession to be played to the jury.
In his brief to this Court, the defendant contends that, due to a defective Miranda rights warning prior to the confession, the subsequent confession should have been suppressed. The pertinent facts are as follows. The defendant was arrested on possession of marijuana and weapons charges on August 31, 1985. On September 2, 1985, while still in the Tangipahoa Parish Jail, the defendant was re-arrested and charged with second degree murder. At approximately 9:10 a.m. on that date, Detective Dangerfield advised the defendant of his Miranda rights. At that time, the defendant refused to sign a written waiver of rights form or to give any statement. According to Detective Dangerfield, the defendant later changed his mind and decided to talk about the offense. Detective Dangerfield testified that, on September 4, 1985, he received a call from the jail indicating that the defendant wished to talk to him. Detective Dangerfield arrived at the Tangipahoa Parish Jail at approximately noon on September 4. After ascertaining that the defendant wished to talk about his involvement in the offense, Detective Dangerfield requested that Tangipahoa Parish Deputy Sheriff Durwood Stewart act as a witness. Detective Dangerfield then turned on the tape recorder and advised *840 defendant of his Miranda rights. However, Detective Dangerfield failed to advise the defendant that anything he might say could be used against him in court. After the incomplete Miranda warning, the defendant confessed to the shooting.[5]
The question presented to this Court is whether or not the instant conviction should be overturned due to an incomplete recitation of Miranda rights immediately before the confession when there was a proper recitation of Miranda rights two days earlier. In determining whether a ruling on a motion to suppress is correct, we are not limited to the evidence adduced at the hearing on that motion. We may consider all pertinent evidence offered at the trial. State v. Fleming, 457 So.2d 1232, 1235 n. 3 (La.App. 1st Cir.), cert. denied, 462 So.2d 191 (La.1984).
Except where the circumstances indicate coercion, there is no necessity to reiterate the Miranda warnings at each phase of an interrogation. In Maguire v. United States, 396 F.2d 327, 331 (9th Cir.1968), cert. denied, 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969), the defendant was properly advised of his Miranda rights three days before his interrogation by another law enforcement officer. Although there was an indication that the latter interrogation was not preceded by a sufficient recitation of Miranda rights, the court held that the proper giving of Miranda rights three days earlier was sufficient to defeat the defendant's claim that he had not been advised of his Miranda rights. See also State v. Sears, 298 So.2d 814, 822 (La. 1974), overruled on other grounds by State v. Lovett, 345 So.2d 1139 (La.1977), in which the defendant's allegation that an inculpatory statement was elicited from him without a recitation of Miranda rights was rejected on the basis that the defendant had been properly advised of his Miranda rights on the preceding day.
As noted above, although the defendant testified that he confessed in exchange for Detective Dangerfield's promise to release his mother from jail, the testimony of Detective Dangerfield and Deputy Stewart specifically rebutted this allegation. Waivers of Miranda rights are matters depending upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. State v. Harvill, 403 So.2d 706 (La.1981). At the trial, the defendant admitted that he was a convicted felon. The habitual offender proceedings and the rap sheet contained in the defendant's pre-sentence investigation indicate that the defendant has a lengthy criminal record. Thus, the record before us indicates that the defendant was no stranger to the criminal justice system and had undoubtedly been the subject of numerous law enforcement investigations and interrogations. Furthermore, at both motion to suppress hearings, the defendant specifically stated that the Miranda rights were issued to him by Detective Dangerfield on September 2. Considering *841 the defendant's background of criminal conduct, and his admission that he received the September 2 advice of Miranda rights, this Court will not overturn the instant conviction for the technically deficient recitation of Miranda rights which preceded the defendant's September 4 confession. Therefore, we conclude that the trial court properly denied the motion to suppress the defendant's confession.
For the above reasons, these assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
In this assignment of error, the defendant contends that the trial court erred in allowing, over defense objection, a tape-recorded statement made by defense witness, Edward McGary, to be played at the trial. The defendant contends that the State failed to lay the proper foundation before the statement was played to the jury.
LSA-R.S. 15:493 provides:
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.
At trial, defense witness Edward McGary testified that he, not the defendant, shot and killed the victim. On cross-examination, when questioned by the prosecutor about a prior inconsistent statement, Mr. McGary specifically denied making such a statement. The record reflects that the prosecutor complied with LSA-R.S. 15:493 by first asking Mr. McGary if he had made a prior statement about the shooting to Detectives Kerry Dangerfield and Mark Stafford on September 3, 1985. Although the prosecutor read to Mr. McGary numerous excerpts from the tape-recorded statement (which had been transcribed) and called upon him to admit that he had made the statement, Mr. McGary repeatedly denied making such a statement.
Despite the defendant's argument in his brief to this Court, there is no doubt that the prosecutor properly complied with LSA-R.S. 15:493 in establishing a foundation for the introduction of this tape-recorded statement. The witness, Mr. McGary, repeatedly denied making this prior inconsistent statement.
This assignment of error has no merit.

ASSIGNMENTS OF ERROR NUMBERS EIGHT AND TWELVE
In assignment of error number eight, defendant contends that the trial court erred in denying his motion to suppress the testimony of Lou Sherman, Jr. In assignment of error number twelve, the defendant contends that the trial court erred in allowing the state to introduce the rebuttal testimony of Mr. Sherman. At the outset, we note that both of these assignments of error deal with the same issue, the alleged improper rebuttal testimony by Assistant District Attorney Lou Sherman, Jr. We also note that the defense did not file a "motion to suppress" the testimony of Mr. Sherman. Instead, the defense objected that Mr. Sherman's testimony exceeded the scope of rebuttal.
Generally, rebuttal evidence is that which is offered to explain, repel, counteract, or disprove facts given in evidence by the adverse party. State v. Washington, 484 So.2d 946, 950 (La.App. 1st Cir.1986). See also LSA-R.S. 15:282. The determination of whether the evidence is rebuttal evidence, and therefore admissible, is an issue which is addressed to the sound discretion of the trial court. Washington, 484 So.2d at 950.
In the instant case, defense witness Edward McGary had testified that it was he, not the defendant, who shot and killed the victim, Lionel Albritton. The state called Mr. Sherman as a rebuttal witness to contradict this testimony by Mr. McGary. *842 Mr. Sherman testified that Mr. McGary had previously informed him that the defendant had shot and killed Lionel Albritton.
Clearly, the trial court did not err in permitting Mr. Sherman's rebuttal testimony. Mr. Sherman's rebuttal testimony directly contradicted the testimony of a key defense witness, Mr. McGary, on the central point of the trial; that is, whether or not the defendant shot and killed Mr. Albritton.
These assignments of error have no merit.

ASSIGNMENTS OF ERROR NUMBERS NINE AND TEN
In assignment of error number nine, the defendant contends that the trial court erred in denying his motion for a mistrial based on the fact that the jury viewed police officers escorting the defendant out of the courtroom. In assignment of error number ten, the defendant contends that the trial court erred in denying his motion for a mistrial due to a witness violating the sequestration order.
LSA-C.Cr.P. art. 775 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]
Initially, we note that the instant assignments of error were not raised by a contemporaneous objection. See LSA-C.Cr.P. art. 841. Both of these issues were raised by the defendant's attorneys after the close of all of the evidence, but before closing arguments. One defense attorney alleged that, earlier in the trial, the jury saw the defendant being escorted out of the courtroom by police officers. The other defense attorney alleged that he observed a State witness who had previously testified standing in the back of the courtroom during the testimony of defense witness Edward McGary. The witness then ran out the back door. Clearly, the appropriate time to object to these alleged incidents would have been immediately after they occurred, instead of near the end of the trial. One of the purposes of the contemporaneous objection rule is to allow a trial judge to notice immediately an alleged irregularity so that he may cure the problem and thus avoid a mistrial or reversal. State v. Gomez, 433 So.2d 230, 240 (La.App. 1st Cir.), cert. denied, 440 So.2d 730 (La.1983); 441 So.2d 747 (La.1983). Because these objections were untimely, any errors which may have occurred were waived.
Moreover, not only did the defendant fail to prove that these incidents actually occurred (apart from the separate allegations of the two defense attorneys), the defendant also failed to demonstrate how he was prejudiced by these incidents. LSA-C.Cr.P. art. 764 provides for sequestration of witnesses upon the trial court's own motion or upon the request of the State or the defense. The purpose of sequestration is to assure that a witness will testify as to his own knowledge of events, to prevent the testimony of one from influencing the testimony of others, and to strengthen the role of cross-examination in developing facts. State v. Nolan, 457 So.2d 1246, 1248 (La.App. 1st Cir.), cert. denied, 462 So.2d 190 (La.1984). As the trial court correctly pointed out, the state witness who allegedly entered the courtroom during the testimony of Mr. McGary did not testify again, so his testimony could not have been influenced or corrupted by the alleged violation of the sequestration order. Furthermore, in regard to the jury allegedly viewing the defendant being escorted from the courtroom by police officers, the defendant did not contend that he was in handcuffs or shackles, or that he was wearing prison attire.
Mistrial is a drastic remedy and should only be granted on a showing of substantial prejudice. State v. Burge, 486 So.2d 855, 866 (La.App. 1st Cir.), cert. denied, 493 So.2d 1204 (La.1986). For the reasons noted above, we conclude that the alleged incidents did not warrant the granting of a mistrial.
These assignments of error lack merit.

*843 ASSIGNMENT OF ERROR NUMBER ELEVEN
In this assignment of error, the defendant contends that the trial court erred in allowing the state to impeach the testimony of its own witness, Allen Cook.
One may impeach his own witness with prior inconsistent statements if taken by surprise by the testimony of that witness or if the witness shows hostility. Therefore, either surprise or hostility will permit impeachment by prior inconsistent statements and both need not be present. LSA-R.S. 15:487; State v. Stewart, 486 So.2d 906, 907-908 (La.App. 1st Cir.1986). LSA-R.S. 15:488 provides:
"Surprise" in the sense of the last preceding article does not arise out of the mere failure of the witness to testify as expected, but out of his testifying upon some material matter against the party introducing him and in favor of the other side.
Several days after the shooting occurred, Mr. Cook gave a tape-recorded statement to Detective Dangerfield, identifying the defendant as the person who shot Lionel Albritton. At the trial, however, when asked this question, Mr. Cook claimed that he did not know who shot the victim. At this point, the prosecutor laid a foundation as required in LSA-R.S. 15:493 and impeached Mr. Cook with the tape-recorded prior inconsistent statement. The defense objected, arguing that Mr. Cook's trial testimony had not "surprised" the State within the meaning of LSA-R.S. 15:488 and, therefore, the state should not be allowed to impeach Mr. Cook. The trial court ruled that the state had been surprised by his trial testimony and, therefore, it would be allowed to use the tape-recorded prior inconsistent statement for impeachment purposes.
There is no doubt that Mr. Cook's trial testimony "surprised" the state within the meaning of LSA-R.S. 15:488 and, therefore, the trial court correctly overruled the defendant's objection and allowed the state to impeach this witness. Stewart, 486 So.2d at 907-908.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER THIRTEEN
In this assignment of error, the defendant contends that, due to the cumulative impact of the assignments of error noted above, he was denied a fair trial. Having found the above assignments of error to be meritless, we likewise conclude that this assignment of error has no merit.
AFFIRMED.
SHORTESS, J., concurs.
NOTES
[1] This sentence was imposed pursuant to former LSA-C.Cr.P. art. 893.1, which provided:

When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
(1) The maximum sentence provided by law, in the same manner as provided in the offense, if the maximum sentence is less than five years, or
(2) Five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
Imposition or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole.
[2] The instant sentence was imposed without benefit of parole, probation, or suspension of sentence. LSA-R.S. 15:529.1 G now provides: "Any sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence." However, because this paragraph was added by Act 774, § 1 of 1987, it was not applicable to the instant case. Nevertheless, the defendant was ineligible for probation or suspension of sentence on the independent basis that he has at least three felony convictions (which fact can be ascertained from the pre-sentence investigation report and the habitual offender hearing). LSA-C.Cr.P. art. 893. Furthermore, because the defendant has at least three felony convictions, he was not eligible for parole. See LSA-R.S. 15:574.4. In our view, it would be preferable to leave parole eligibility determinations to the Parole Board. However, we conclude that the trial court is clothed with the authority to impose a sentence prohibiting parole eligibility when, as in the instant case, this prohibition is appropriate. State v. Bell, 471 So.2d 1190, 1194 (La.App. 3d Cir.), cert. denied, 477 So.2d 97 (La.1985). See also State v. Shaffer, 529 So.2d 98, 100 (La.App. 4th Cir.1988).
[3] The numbers of the assignments of error in the defendant's brief to this court do not necessarily correspond with the numbers of the errors assigned in the record.
[4] The defendant's sufficiency argument is clearly limited to the issue of the identity of the perpetrator of this offense, i.e., Mr. McGary or himself. He does not raise the issue of whether or not the elements of the offense of manslaughter were proven beyond a reasonable doubt. Nevertheless, we conclude that there is sufficient evidence in the record (especially the defendant's tape-recorded confession) to support the jury's determination that the defendant acted in the heat of passion after being provoked by the victim.
[5] In the instant case, the first motion to suppress hearing took place on July 23, 1987. After the hearing, the trial court denied the defendant's motions to suppress physical evidence and his confession. However, on August 28, 1987, the Louisiana Supreme Court granted the defendant's writ application in part and vacated the trial court's ruling on the motion to suppress the confession, finding that the state had failed to specifically rebut the defendant's allegations of misconduct. At the second motion to suppress hearing on September 24, 1987, Detective Kerry Dangerfield specifically testified that he did not promise to release the defendant's mother, Mrs. Nellie Kimble, if the defendant confessed to the shooting. His testimony on this point was corroborated by the testimony of a witness to the confession, Tangipahoa Parish Deputy Sheriff Durwood Stewart. The trial court concluded that the defendant's confession was voluntary, and it again denied the motion to suppress the confession.

In his brief to this court, the defendant does not raise the issue of coercion, i.e., that he confessed to shooting Lionel Albritton in exchange for Detective Dangerfield's promise that the defendant's mother would be released from jail. Instead, the only issue raised by the defendant in these assignments of error is the defective Miranda warning issued to him by Detective Dangerfield prior to the confession. In any event, we conclude that the testimony of Detective Dangerfield and Deputy Stewart specifically rebutted the defendant's allegations of coercion; and, therefore, the trial court properly denied the motion to suppress the confession on this basis. See State v. Petterway, 403 So.2d 1157, 1159 (La.1981); State v. James, 459 So.2d 28, 29-30 (La.App. 1st Cir.1984).