STATE OF LOUISIANA
v.
JOSEPH M. BRISTER.
No. 2007 KA 0787.
Court of Appeals of Louisiana, First Circuit.
November 2, 2007.
NOT DESIGNATED FOR PUBLICATION.
HON. WALTER P. REED, District Attorney, BY: KATHRYN W. LANDRY, Assistant District Attorney, Counsel for Appellee, State of Louisiana.
FRANK SLOAN, Counsel for Defendant/Appellant, Joseph M. Brister
Before GAIDRY, McDONALD, AND McCLENDON, JJ.
McCLENDON, J.
Defendant, Joseph M. Brister, was charged by bill of information with being a convicted felon in possession of a firearm or carrying a concealed weapon (count one) and illegal use of a weapon or dangerous instrumentality (count two), violations of LSA-R.S. 14:95.1 and 14:94. Defendant entered a plea of not guilty. After a trial by jury, defendant was found guilty as charged as to each count. The state filed a habitual offender bill of information seeking to enhance count two. Defendant was adjudicated a fourth-felony habitual offender. As to count one, defendant was sentenced to fifteen years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence and a $1,000 fine, which the trial court suspended. Pursuant to LSA-R.S. 15:529.1A(1)(c)(i), on count two, defendant was sentenced to forty years imprisonment at hard labor without the benefit of probation or suspension of sentence. The trial court ordered that the sentences be served concurrently.
Defendant now appeals, arguing that the trial court imposed an excessive sentence on count two. In the alternative, defendant argues that the sentencing minute entry should be amended to conform to the sentencing transcript. Defendant raises the following additional assignments of error in a pro se brief:
1. The trial court erred in denying the motion to suppress statements made by defendant on March 21, 2005.
2. The trial court wrongfully allowed the prosecutor to exclude prospective jurors on the basis of race and defense counsel was ineffective for failing to object to such exclusion.
3. Defendant's May 5, 1992 predicate guilty plea to access device fraud is invalid because he was not apprised of his right to have the case tried by a judge.
4. A "pen pack" was not admitted during the habitual offender proceeding and the trial court erred in allowing defendant to be multi-billed on both instant convictions.
5. The trial court violated LSA-R.S. 15:529.1D in not imposing a previous sentence on the instant offenses before imposing sentence under the habitual offender law.
For the following reasons, we affirm the convictions, the habitual offender adjudication, and the sentences, and remand to the trial court to amend the sentencing minute entry.

STATEMENT OF FACTS
During the early morning hours of March 20, 2005, Trooper Christian Chattellier and Lieutenant Richard Cook of the Louisiana State Police heard suspected gunshots coming from U.S. Highway 190 in Mandeville, Louisiana, in front of the Troop L Headquarters. The officers were outside at the time. Trooper Chattellier walked to the service road in front of the troop and observed a light-colored Pontiac traveling southbound on U.S. Highway 190 at thirty to forty miles per hour. The vehicle was traveling in the right lane toward the shoulder of the highway. The passenger (who appeared to be a large-framed male) leaned out of the window, extended his arm, and fired a gunshot toward the troop.
While maintaining sight of the vehicle, Trooper Chattellier quickly accessed his unit, and pursued and stopped the Pontiac. Trooper Chattellier observed the passenger as he moved about in the vehicle. Trooper Chattellier exited his unit, approached the vehicle, drew his weapon, and ordered the passenger to exit the vehicle with his hands up. After further orders to exit the vehicle with his hands up, the passenger exited with his hands down. Trooper Chattellier repeatedly ordered the passenger to hold his hands up. Lieutenant Cook approached, drew his weapon, and stood guard as Trooper Chattellier patted down the male subject. The subject's breath smelled of alcohol. The driver, a female, was also ordered out of the vehicle. There were no other occupants in the vehicle.
Trooper Chattellier recovered a black handgun from the floorboard on the passenger side of the vehicle. A cold, partially consumed bottle of Budweiser beer was located in the back of the vehicle. Defendant was identified as the passenger and sole male occupant of the vehicle.

ASSIGNMENT OF ERROR NUMBER ONE
In the first assignment of error, defendant argues that the forty-year sentence imposed on the enhanced count (count two) is excessive. Defendant notes that the maximum term of imprisonment for the underlying offense, illegal use of a weapon, is two years with or without hard labor. Defendant further notes that his prior convictions, unauthorized entry of an inhabited dwelling, burglary of an inhabited dwelling, and access device fraud, were not crimes of violence. Defendant contends that the trial court failed to consider the nature of his convictions and his obvious intoxication at the time of the offenses as mitigating factors. Defendant concludes that a lesser sentence would have been proportionate to his actions.
In imposing sentence, the trial court noted that defendant's parole was revoked on two occasions. The trial court further noted defendant's pattern of repeated criminal behavior. After the imposition of sentence, the defense attorney, although noting the trial court's discretion to impose a sentence greatly higher than forty years, generally objected to the sentence and noted defendant's desire to appeal the conviction and sentence. The trial court denied "the request for reduction in sentence" and reminded defendant to file a written motion. Arguably, defendant's counsel's objection to the length of this sentence could be considered a "bare claim of excessiveness" under State v. Mims, 619 So.2d 1059, 1060 (La. 1993) (per curiam). State v. Mitchell, 96-1896, p. 4 (La.App. 1 Cir. 6/20/97), 697 So.2d 22, 24, writ denied, 97-1988 (La. 1/9/98), 705 So.2d 1098. Accordingly, defendant's sentence is examined only for constitutional excessiveness.
Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. The Louisiana Supreme Court in State v. Sepulvado, 367 So.2d 762, 767 (La. 1979), held that a sentence that is within the statutory limits may still be excessive. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. State v. Hurst, 99-2868, p. 10 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 00-3053 (La. 10/5/01), 798 So.2d 962. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. Hurst, 99-2868 at pp. 10-11, 797 So.2d at 83.
In State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993), the Louisiana Supreme Court recognized that if a trial judge determines that the punishment mandated by the Habitual Offender Law makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he is duty bound to reduce the sentence to one that would not be constitutionally excessive.
However, the holding in Dorthey was made only after, and in light of, express recognition by the court that the determination and definition of acts, which are punishable as crimes, is purely a legislative function. It is the Legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. Moreover, courts are charged with applying these punishments unless they are found to be unconstitutional. Dorthey, 623 So.2d at 1278.
As a fourth-felony habitual offender, defendant was subject, under LSA-R.S. 15:529.1A(1)(c)(i), to a minimum term of twenty years imprisonment and a maximum term of life imprisonment. See also LSR-R.S. 14:94. Here, defendant received a forty-year imprisonment term, significantly less than the maximum life sentence. We do not find that the trial court abused its discretion in imposing an enhanced sentence of forty years of imprisonment. The sentence is not shocking or grossly disproportionate to defendant's criminal behavior. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
In the second assignment of error, defendant notes that the trial court (upon advice from the prosecutor) amended the enhanced sentence imposed on count two to require that the sentence be served without benefit of probation or suspension of sentence, without restricting parole. However, as also noted by defendant, the minute entry for the sentencing proceeding incorrectly indicates that the sentence is to be served without benefit of probation, parole, or suspension of sentence. Defendant contends that the trial court should be ordered to amend the minute entry to conform to the sentencing transcript.
Herein, the minute entry for the sentencing on count two incorrectly indicates that parole was restricted. Such a restriction of parole would be illegal. See LSA-R.S. 15:529.1G and 14:94. However, the transcript reveals the court properly sentenced defendant. When there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983). Thus, we hereby order the trial court to correct the minute entry and commitment order, if necessary, to conform to the transcript. State v. Lynch, 94-0543, pp. 20-21 (La.App. 1 Cir. 5/5/95), 655 So.2d 470, 481-82, writ denied, 95-1441 (La. 11/13/95), 662 So.2d 466. The matter is remanded to the trial court with an order to correct the minute entry for the sentence on the habitual offender bill and, if necessary, the commitment order, in accordance with this opinion.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE
In the first pro se assignment of error, defendant contends that the trial court erred in denying the motion to suppress as to the statement made by defendant on March 21, 2005. Defendant argues that the statement made at the St. Tammany Parish Correctional Center on March 21, 2005, during a visit by Agent Joseph Cotton (of the Department of Public Safety and Corrections, Division of Probation and Parole) is inadmissible since defendant was in custody and should have been advised of his Miranda rights. Defendant argues that the statement was made during interrogation and was not given voluntarily.
The state bears the burden of proving that an accused who makes an inculpatory statement or confession during custodial interrogation was first advised of his constitutional rights and made an intelligent waiver of those rights. State v. Davis, 94-2332, p. 8 (La.App. 1 Cir. 12/15/95), 666 So.2d 400, 406, writ denied, 96-0127 (La. 4/19/96), 671 So.2d 925. In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court promulgated a set of safeguards to protect the therein delineated constitutional rights of persons subject to custodial police interrogation. The warnings must inform the person in custody that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.[1] Miranda, 384 U.S. at 444, 86 S.Ct. at 1612. In addition to showing that the Miranda requirements were met, the state must affirmatively show that the statement or confession was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises in order to introduce into evidence a defendant's statement or confession. LSA-R.S. 15:451.
"Interrogation," as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself. Rhode Island v. Innis, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). In Innis, 446 U.S. at 300-01, 100 S.Ct. at 1689-90, the Court extended the Miranda safeguards to the "functional equivalent" of interrogation, which the Court defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." This is an objective test that does not require a determination of the actual perception of the suspect, but prohibits police speech or conduct that creates a situation in which the suspect probably will experience the functional equivalent of direct questioning by concluding that the police are trying to get him to make an incriminating response. State v. Abadie, 612 So.2d 1, 6 (La.), cert. denied, 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993). The Court in Innis concluded that the police did not "interrogate" the defendant. In Innis, two police officers commented about their concern that handicapped children might injure themselves if, by chance, they found a missing murder weapon. This musing between the officers prompted the defendant, who had previously requested counsel, to reveal the location of the weapon. The Court found this conduct was not the "functional equivalent" of interrogation because the officers'"off hand remarks" were not express questions directed to the defendant and the officers had no reason to suspect that the defendant was susceptible to an appeal concerning the safety of handicapped children. Innis, 446 U.S. at 300-03, 100 S.Ct. at 1689-91.
Trial courts are vested with great discretion when ruling on a motion to suppress. Consequently, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. State v. Leger, 05-0011, p. 10 (La. 7/10/06), 936 So.2d 108, 122, cert. denied, ___ U.S. ___, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). In determining whether the ruling on defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La. 1979).
Trooper Chattellier placed defendant under arrest after the instant offense and transported him to Troop L. Trooper Chattellier read the Department of Public Safety and Corrections Office's "State Police Statement of Miranda Rights" form to defendant. Defendant was advised to follow along with the trooper. The trooper read each right and defendant indicated that he understood his rights. The form specifically advised the right to remain silent, that any statement may be used as evidence, the right to the presence of an attorney (either retained or appointed), and the right to stop answering questions at any time (even subsequent to a prior decision to answer questions without a lawyer present). According to Trooper Chattellier, defendant stated that he understood his rights and seemed to understand his rights. Defendant did not appear to be intoxicated such that he would not understand his rights. Further, defendant did not appear to be mentally impaired or ill. Defendant was not threatened or promised anything, and stated that he was willing to answer questions. Defendant stated that the firearm was not his, never indicating that he wished to cease questioning or to have a lawyer present. On cross-examination, Trooper Chattellier confirmed that he smelled alcohol on defendant's breath when he was stopped. Trooper Chattellier's trial testimony was consistent with his testimony at the motion to suppress hearing.
Statements made to Agent Cotton were at issue at the motion to suppress hearing. Agent Cotton was defendant's parole supervisor at the time of his instant arrest. According to his testimony at the hearing on the motion to suppress, Agent Cotton visited defendant at the jail on March 21, 2005, the day after defendant's arrest. The purpose of the visit was to complete paperwork and drug screening. Agent Cotton did not advise defendant of his Miranda rights and did not intend to interrogate defendant. Agent Cotton specifically testified, "[Ms soon as I brought him out of the holding cell, he started talking to me about what had happened. I told him that I was there to place a hold on him and also to drug screen him. He just kept wanting to tell me what was going on with what happened that night before." Agent Cotton stated that he did not ask defendant any questions to elicit defendant's initial remarks. The substance of those remarks was not disclosed during the hearing. As a follow-up question, Agent Cotton asked defendant what he was doing with the firearm and defendant responded. The substance of the response also was not disclosed at the hearing.
On March 29, 2005, Agent Cotton visited defendant in the jail to take him the "notice of preliminary hearing for his rights for hearing as a parolee." Without any questioning or an attempt to elicit such information, defendant informed the agent that the weapon that was in the rear of the car belonged to his girlfriend's uncle. Agent Cotton had not advised defendant of his Miranda rights. Agent Cotton noted a follow-up question, "I think I asked him why he was changing his story from earlier saying that it was some friends with him and now he is saying his uncle, and he just said that he must have been mistaken."
On cross-examination, Agent Cotton stated that at some point on March 21, he advised defendant that anything he said could be used against him but did not read him his Miranda rights. On redirect-examination, Agent Cotton stated that he could not recall whether he asked for any clarification after defendant spontaneously began discussing the case. According to Agent Cotton's offense report, on March 21, defendant initially advised the agent that he noticed a semi-automatic pistol on the floor of the back seat as his girlfriend was driving on U.S. Highway 190. He further advised that he picked the firearm up and noticed that it was jammed, with a bullet coming out of the ejector port. As he started hitting the top rail of the pistol on the side of the car window frame, the pistol discharged. After Agent Cotton warned defendant that anything he said could be used against him, defendant stated that he was innocent and wanted the agent to know what happened. Agent Cotton asked defendant why he had a firearm and defendant stated that his friends (two unnamed friends allowed to ride in the vehicle) must have left the firearm in the vehicle.
The trial court concluded that Agent Cotton's March 29, 2005 followup question to defendant regarding the inconsistency of the two statements was tantamount to interrogation. The trial court denied the motion to suppress as to the March 21, 2005 statement and granted the motion as to any portion of defendant's statement on March 29, 2005 made after Agent Cotton's follow-up question. During the trial, Agent Cotton testified as to defendant's two inconsistent explanations provided during the separate visits noted above (March 21, 2005 and March 29, 2005) regarding the presence of the firearm. As noted, on appeal defendant solely contests the admission of the March 21, 2005 statement.
Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings even where a defendant is in custody. State v. Castillo, 389 So.2d 1307, 1310 (La. 1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981). Herein, the initial remarks made by defendant on March 21, 2005 were spontaneous and voluntary. However, it appears that Agent Cotton elicited defendant's subsequent remarks in explanation of his possession of the firearm. Nonetheless, Trooper Chattellier advised defendant of his Miranda rights the day before the statement at issue. When a suspect has been informed of and has waived his Miranda rights during initial questioning by the police, those rights need not be repeated before every subsequent interrogation unless the evidence shows a significant break in the interrogation process, such as a request for the assistance of counsel. State v. Harvill, 403 So.2d 706, 709 (La. 1981); State v. Kimble, 546 So.2d 834, 840 (La.App. 1 Cir. 1989). There is no requirement that Miranda warnings be given or repeated every time a suspect is questioned, absent a showing of coercion on the part of the police. State v. Moseley, 587 So.2d 46, 50 (La.App. 2 Cir.), writ denied, 589 So.2d 1066 (La. 1991). Defendant does not contend on appeal that he invoked his right to counsel during any of the questioning sessions. Rather, defendant claims only that his March 21 statement was elicited by interrogation. Defendant was verbally advised of his Miranda rights and signed a form waiving those rights. He never asked to speak to an attorney. With no showing of any evidence of coercion, or a request from defendant to speak to an attorney, we cannot say that the gap between the statement to Agent Cotton and his advice of rights rendered the statement inadmissible. Thus, we find that the record supports the trial court's denial of the motion to suppress the March 21, 2005 statement at issue herein. This assignment of error lacks merit.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO
In the second pro se assignment of error, defendant claims that the trial court wrongfully allowed the prosecutor to exclude prospective jurors on the basis of race and that defense counsel was ineffective for failing to object to such exclusion. Defendant claims that the record contains ample evidence to substantiate prima facie proof of such exclusion.
Under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a defendant must first establish a prima facie case of discrimination by showing facts and circumstances that raise an inference that the prosecuting attorney uses his peremptory challenge or challenges to exclude potential jurors because of race. If such a showing is made, the burden then shifts to the prosecution to articulate a race-neutral cause for the challenge or challenges. Herein, generally, the race of the prospective jurors was not stated in the record. The state peremptorily excused six prospective jurors. As to the second prospective juror excused by the state, defense counsel noted that the prospective juror was African-American, the same race as defendant. In noting such, defense counsel specified that there was "no pattern yet." Defense counsel did not make any comments as to the other peremptory challenges exercised by the state. Defense counsel made no objections during voir dire examination either to the manner of questioning prospective jurors or to the removal of jurors peremptorily challenged. A defendant waives review of irregularities in the selection of the jury when an objection is not timely raised. LSA-C.Cr.P. art. 841; see State v. Potter, 591 So.2d 1166, 1168-69 (La. 1991); State v. Spencer, 446 So.2d 1197, 1200 (La. 1984); State v. Bazile, 386 So.2d 349, 351 (La. 1980). Nevertheless, defendant recasts this claim as an allegation of defense counsel's ineffectiveness.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. In assessing a claim of ineffectiveness, a twopronged test is employed. The defendant must show that (1) his attorney's performance was deficient; and (2) the deficiency prejudiced him. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial or "a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; State v. Felder, 00-2887, p. 11 (La.App. 1 Cir. 9/28/01), 809 So.2d 360, 369-70, writ denied, 01-3027 (La. 10/25/02), 827 So.2d 1173. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 860 (La.App. 1 Cir. 1992), writ denied, 614 So.2d 1263 (La. 1993).
A claim of ineffectiveness is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal. State v. Miller, 99-0192, p. 24 (La. 9/6/00), 776 So.2d 396, 411, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001). In the present case, the record, standing alone, does not establish ineffective assistance of counsel. The particular allegation of ineffective assistance of counsel cannot sufficiently be investigated from an inspection of the record alone. Only in an evidentiary hearing in the district court, where defendant could present evidence beyond that contained in the instant record, could these allegations be sufficiently investigated. Accordingly, this allegation is not subject to appellate review. State v. Albert, 96-1991, p. 11 (La.App. 1 Cir. 6/20/97), 697 So.2d 1355, 1363-64.[2]

PRO SE ASSIGNMENT OF ERROR NUMBER THREE
In the third pro se assignment of error, defendant argues that his May 5, 1992 predicate guilty plea to access device fraud is invalid, as he was not apprised of his right to have the case tried by a judge. Thus, defendant argues that he did not knowingly and intelligently waive his rights when he pleaded guilty to that particular predicate offense. He does not contest the other two predicate convictions. Defendant further argues that the habitual offender adjudication is illegal because the trial court misinformed him as to the sentencing range for the enhanced offense. Citing LSA-R.S. 15:529.1A(1)(c)(ii), defendant contends that he is not subject to life imprisonment. Defendant concludes that the trial court erred in informing him that the sentencing range was twenty years to life imprisonment.
To prove that a defendant is a habitual offender, the state must establish, by competent evidence, the prior felony convictions and that the defendant is the same person who was convicted of the prior felonies. State v. Chaney, 423 So.2d 1092, 1103 (La. 1982). The state may establish this by various means, such as the testimony of witnesses to prior crimes, expert testimony matching fingerprints of the accused with those in the record of prior proceedings, or photographs contained in a duly authenticated record. State v. Brown, 514 So.2d 99, 106 (La. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988).
Where a prior conviction resulted from a guilty plea, the state must show that the defendant was advised of his constitutional rights and that he knowingly waived those rights prior to the guilty plea, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). If the defendant denies the allegations of the bill of information, the state has the burden of proving the existence of the prior guilty pleas and that the defendant was represented by counsel. Once the state meets this burden, the defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. Thereafter, the state must prove the constitutionality of the plea. State v. Shelton, 621 So.2d 769, 779-80 (La. 1993).
In proving the constitutionality of the plea, the state must produce either a "perfect" transcript of the Boykin colloquy between the defendant and the trial judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an "imperfect" transcript. If anything less than a "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the state to determine whether the state met its burden of proof that defendant's prior guilty plea was informed and voluntary. Shelton, 621 So.2d at 780.
In this case, defendant failed to file a written response to the bill of information, setting forth with particularity his claim and the factual basis for it, as mandated by LSA-R.S. 15:529.1D(1)(b). Moreover, defendant did not make any objections prior to the trial court's habitual offender adjudication. After the trial court found defendant to be a fourth-felony offender, defendant noted a general objection to the adjudication. Defendant presents these challenges for the first time on appeal. In the absence of a contemporaneous objection at the multiple offender hearing, defendant otherwise may not complain for the first time on review that the records of his guilty pleas introduced by the state at the multiple offender hearing did not reflect compliance with Boykin rules. State v. Windham, 630 So.2d 688 (La. 1993) (per curiam); see also LSA-C.Cr.P. art. 841A.
At the habitual offender hearing, the state introduced a fingerprint card for defendant, certified copies of the bills of information and extracts of minute entries in docket numbers 203404 of the 22nd Judicial District Court (the 1992 predicate guilty plea contested herein), 207577 of the 22nd Judicial District Court (a 1993 guilty plea to burglary of an inhabited dwelling), and 265827 of the 22nd Judicial District Court (a 1997 jury-trial conviction of unauthorized entry of an inhabited dwelling). State Exhibits S-1 and S-2 also contained a transcript of the corresponding proceedings. The evidence presented by the state reflects that defendant was represented by counsel as to each predicate conviction. The state presented the testimony of Deputy Lloyd Morse, an expert in the field of fingerprint analysis and identification. Deputy Morse concluded that the fingerprints from the predicate convictions belonged to defendant. The state also presented the testimony of Agent Cotton, who supervised defendant's parole in docket numbers 265827 and 207577.
The documentary and testimonial evidence presented by the state more than adequately satisfied the state's initial burden of proving the existence of the contested predicate guilty plea and that defendant was represented by counsel. It was defendant's burden at that point to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Defendant made no attempt to do so. Thus, the burden of proving the constitutionality of the plea never shifted to the state. See Shelton, 621 So.2d at 779. Moreover, as previously noted, the record does not contain any written response filed by defendant to the habitual offender bill of information setting forth any objection to the information, or any claim that the predicates upon which the state relied were obtained in violation of the Louisiana or United States Constitutions and the factual basis for the claim, as required by LSA-R.S. 15:529.1D(1)(a) and D(1)(b). Consequently, defendant is precluded from urging his claim that the predicate plea in question was entered without a knowing waiver of Boykin rights. Nonetheless, we note that defendant is not claiming that he was unaware of his right to a bench trial, only that it was not properly explained. Defendant had the assistance of effective counsel who was presumptively aware of the right to waive a jury. Moreover, a failure of the trial judge to inform a defendant of his right to a bench trial is not reversible error. State v. Parker, 416 So.2d 545, 552 (La. 1982).
Finally, defendant's claim that the trial court erred in informing him that the sentencing range for his enhanced conviction is twenty years to life imprisonment is flawed. Defendant is correct in noting that he is not subject to a mandatory life sentence pursuant to LSA-R.S. 15:529.1A(1)(c)(ii). However, as previously noted herein, defendant was in fact subject to a minimum term of imprisonment of twenty years and a maximum term of life imprisonment under LSA-R.S. 15:529.1A(1)(c)(i). See also LSA-R.S. 14:94. This assignment of error lacks merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FOUR
In the fourth pro se assignment of error, defendant makes "general assertions that no `pen pack' was admitted; that the testimony of the fingerprint expert was insufficient and having been convicted on [sic] same day and of crimes arising from a single criminal episode, he was exposed to a multiple offender adjudication on only one of his two convictions in this case." As to the final assertion, defendant adds that the trial court allowed him to be multiple-billed on both of the instant convictions. Defendant has not presented any further argument in support of these assertions.
Arguably, the issues raised in this assignment were not properly briefed and should be considered abandoned. Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4. Nevertheless, we note the following. We assume that defendant is asserting that a pen pack should have been admitted to show the discharge dates for the predicate convictions. This assertion has not been properly preserved for review on appeal as the issue was not raised below. LSA-R.S. 15:529.1D(1)(b); see also LSA-C.Cr.P. art. 841A; Windham, 630 So.2d at 688. Moreover, the state's documents, considering the conviction dates, were sufficient to indicate that the cleansing period did not elapse between any two convictions and, therefore, the state did not have to prove the exact discharge dates. See State v. Parker, 00-2861, p. 9 (La.App. 1 Cir. 11/9/01), 818 So.2d 85, 90-91.
Moreover, defendant did not object to any portion of the testimony of Deputy Morse (the state's fingerprint analyst and identification expert) or present any arguments regarding the fingerprint evidence. Deputy Morse took inked fingerprints from defendant prior to the habitual offender hearing.
Deputy Morse compared those fingerprints to the fingerprints on the back of the bills of information for the predicate convictions and concluded that defendant's fingerprints were on the back of each exhibit. As heretofore noted, the state successfully carried its burden of proving that defendant is the same person who was convicted of the prior felonies.
As to the final general assertion, the record is clear that the state filed a habitual offender bill of information specifically seeking to enhance count two (illegal use of a weapon or dangerous instrumentality) and the trial court imposed an enhanced sentence on count two only. Thus, defendant was not multiple-billed on both of the instant convictions. This assignment of error lacks merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FIVE
In the fifth and final pro se assignment of error, defendant contends that the enhanced sentence imposed is invalid because the trial court did not impose a sentence on the underlying conviction before sentencing defendant under the habitual offender law. Defendant concludes that the failure to impose a prior sentence violated LSA-R.S. 15:529.1D(3).
LSA-R.S. 15:529.1D(3), in pertinent part, provides: "When the judge finds that he has been convicted of a prior felony or felonies or adjudicated a delinquent as authorized in Subsection A, ... the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed." (Emphasis added). Based on the plain language of the statute, it is clear that the trial court is not required to impose a prior sentence before imposing sentence under the habitual offender law. Since any previous sentence imposed upon defendant would have had to be vacated upon his sentencing as a multiple offender, the failure to impose an original sentence clearly does not constitute error. This assignment of error lacks merit.
CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED. CASE REMANDED TO THE TRIAL COURT WITH INSTRUCTIONS AND ORDER TO AMEND THE SENTENCING MINUTE ENTRY AS TO COUNT TWO.
NOTES
[1] Miranda only applies where the party performing the "interrogation" is a "state actor." The Louisiana Supreme Court has found a probation officer to be a state actor. State v. Maise, 00-1158, pp. 10-11 (La. 1/15/02), 805 So.2d 1141, 1149.
[2] Defendant would have to satisfy the requirements of LSA-C.Cr.P. art. 924, et seq., in order to receive such a hearing.